UNITED STATES of America,
Plaintiff,

v.

The IDAHO FIRST NATIONAL BANK
and Fidelity National Bank,

Defendants,

and

William Camp, Comptroller of the
Currency, Intervenor.

Civ. A. No. 1699.

United States District Court,
D. Idaho.

April 21, 1970.

Donald A. Kinkaid, Richard J. Torre, Kevin D. Brenan, James J. Falco, Richard Mezan, Antitrust Div., Dept. of Justice, Washington, D.C., for plaintiff.

Eugene J. Metzger, Carl W. Schwarz, Metzger, Schwarz & McKenna, Washington, D. C., Robert E. Smylie, Willis E.

Sullivan, Langroise, Clark, Sullivan & Smylie, Boise, Idaho, Raymond P. Parry, Thomas G. Nelson, Parry, Robertson, Daly & Larson, Twin Falls, Idaho, for defendant.

Philip L. Roache, Jr., Charles H. McEnerney, Jr., Jon D. Hartman, Office of the Comptroller of the Currency, Washington, D. C., for intervenor.

## DECISION

BOLDT, District Judge (by assignment).

In this civil action the Department of Justice (Justice) in the name of plaintiff seeks to enjoin consummation of a merger of Idaho First National Bank (Idaho First) and Fidelity National Bank (Fidelity) whereby Fidelity will become a branch of Idaho First, agreed to by the banks and approved by the Comptroller of the Currency (Comptroller), upon the ground it is violative of Section 7 of the Clayton Act, 15 U.S.C.A. § 18. Justice alleges that if consummated the merger may "substantially lessen competition" in commercial banking within the intent and meaning of the Clayton Act and the Bank Merger Act of 1966 (BMA 1966), 12 U.S.C.A. § 1828. Jurisdiction of the case is vested in this court by Section 15 of the Clayton Act. The law and fact issues in the case are stated and determined in this decision and in detailed Findings of Fact and Conclusions of Law entered by the Court.

Idaho is a state large in area but one of the smallest of the nation in population. The state has no large metropolitan area, the largest city in the state, Boise, now having an estimated population of about 72,000. The city of Twin Falls is a small town having a present population of less than 25,000. It is located in a farming and cattle raising county of the same name which presently has a population of less than 43,000. Twin Falls city and parts of the county are within the so-called "Magic Valley," a vaguely delineated area at least six times larger than Twin Falls County.

In terms of assets and deposits, Idaho First is one of the three largest commercial banks doing business in Idaho and the largest bank having its headquarters in the state. Idaho First is largely owned and managed by residents of Idaho. It has approximately 35% of the total commercial bank deposits in Idaho, its central offices are in Boise and it has 50 branch offices throughout the state.

Fidelity is the oldest commercial bank in Twin Falls County and is one of four commercial banks in Twin Falls city. Two of the banks in the city are branch offices of the two other largest banking organizations doing business in Idaho. Although seventh largest of twenty-six banks in Idaho, Fidelity ranks third in size of the four banks in Twin Falls city. Fidelity has branch offices in the small communities of Filer and Hazelton, respectively about 8 and 25 road miles distant from Twin Falls city.

With the approval of counsel, during the trial the Court drove several hundred miles in seeing every bank office and almost every town or hamlet in the "Magic Valley" having its name on a current map published by the state. Twin Falls city and its environs were given special attention as were other communities in the general vicinity.

By statute the Comptroller has sole authority to grant permission for national banks to establish branch offices either *de novo* or by merger. 12 U.S.C.A. §§ 36(c) and 1828(c) (2). Over a period of years, first when there were two and later when there were three banks in Twin Falls city, Idaho First made continuing attempts by formal application and informal inquiry to obtain approval of the Comptroller for a *de novo* branch office in Twin Falls city. All such efforts, the latest not long prior to the trial, have been unsuccessful, being denied or rebuffed primarily on the ground that Twin Falls city and its surrounding area were considered by the Comptroller and his staff as adequately served by the other banks located in the city.

On October 16, 1968 Idaho First and Fidelity entered into a merger agreement which was ratified by the directors of each bank and on October 25, 1968 formal written application for approval of the merger was submitted to the Comptroller. After full investigation and consideration, the Comptroller concluded that the merging banks were not actual or potential competitors with each other; that the merger would not substantially lessen competition; and that the merger would provide additional, improved and more adequate bank services meeting the convenience and needs of the Twin Falls community which would clearly outweigh in public interest any conceivable anticompetitive effects that might result from the merger. On these findings the Comptroller approved the merger in an opinion dated January 22, 1969. Shortly after commencement of this action, the Comptroller intervened in the case as a matter of right. 12 U.S.C.A. § 1828(c) (7) (D).

In substance, Justice alleges that if the merger goes into effect it will eliminate competition between the defendant banks, substantially lessen competition in the relevant market area, increase the concentration of commercial banks, remove Idaho First as an actual or potential competitor in the Twin Falls area, and that the elimination of Fidelity will remove a strong locally owned bank which is economically and socially oriented to the particular service of an agriculturally oriented area.

The defendants and intervenor deny all of the Justice allegations and allege: that the geographic area within which direct and immediate competitive effects of the merger will be felt is not a "section of the country" within the meaning of that term in Section 7 of the Clayton Act and BMA 1966 and therefore the Act does not authorize this action; that defendant banks do not actually or potentially compete with each other; that their merger will increase and not substantially lessen competition in the relevant market area; and that any possible anticompetitive effects of the merger will be clearly outweighed in the public interest by additional improved services meeting the convenience and needs of the community.

All issues in this case must be considered and determined in the light of two Congressional enactments, i.e., the Clayton Act and BMA 1966, the pertinent portions of which are:

### Clayton Act

"No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C.A. § 18.

### BMA 1966

"The responsible agency shall not approve—

(A) any proposed merger transaction which would result in a monopoly, or which would be in furtherance of any combination or conspiracy to monopolize or to attempt to monopolize the business of banking in any part of the United States, or

(B) any other proposed merger transaction whose effect in any section of the country may be substantially to lessen competition, or to tend to create a monopoly, or which in any other manner would be in restraint of trade, unless it finds that the anticompetitive effects of the proposed transaction are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served.

In every case, the responsible agency shall take into consideration the financial and managerial resources and future prospects of the existing and

proposed institutions, and the convenience and needs of the community to be served." 12 U.S.C.A. § 1828(c) (5).

"[In] [a]ny action brought under the antitrust laws arising out of a merger transaction * * * the court shall review de novo the issues presented.

"In any judicial proceeding attacking a merger transaction approved under paragraph (5) on the ground that the merger transaction alone and of itself constituted a violation of any antitrust laws other than section 2 of Title 15, the standards applied by the court shall be identical with those that the banking agencies are directed to apply under paragraph (5)." 12 U.S. C.A. § 1828(c) (7) (A) and (B).

■■ Since BMA 1966 specifies trial *de novo,* the function of the trial court in a bank merger case is not a limited review of administrative action or ruling, but all issues of fact and law must be considered and determined anew and afresh by the finding of pertinent facts from the evidence presented in the trial and the application of controlling statute and case law to the facts as found by the Court. The parties agree and the cited cases hold plaintiff has the burden of proof to show by a preponderance of evidence that in reasonable probability the merger *may substantially lessen* competition and defendants have the burden of proving the merger will provide greater and better bank services meeting the needs and requirements of the community that clearly outweigh in the public interest any anticompetitive effects that may result from the merger.

All national bank merger cases decided since 1963 when *Philadelphia* first held bank mergers to be within the Clayton Act, are:

United States v. Third National Bank in Nashville, 390 U.S. 171, 88 S.Ct. 882, 19 L.Ed.2d 1015 (1968);

United States v. First City National Bank of Houston, 386 U.S. 361, 87 S. Ct. 1088, 18 L.Ed.2d 151 (1967);

United States v. First National Bank & Trust Co. of Lexington, 376 U.S. 665, 84 S.Ct. 1033, 12 L.Ed.2d 1 (1964);

United States v. Philadelphia National Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963);

United States v. First National Bank of Maryland, 310 F.Supp. 157 (D.Md. 1970);

United States v. Phillipsburg National Bank & Trust Co., 306 F.Supp. 645 (D.N.J.1969);

United States v. First National Bank of Jackson, 301 F.Supp. 1161 (S.D. Miss.1969);

United States v. Provident National Bank, 280 F.Supp. 1 (E.D.Pa.1968);

United States v. Crocker-Anglo National Bank, 277 F.Supp. 133 (N.D. Cal.1967);

United States v. Manufacturers Hanover Trust Co., 240 F.Supp. 867 (S.D. N.Y.1965).

Of these only *Nashville* and *Houston* are Supreme Court decisions since enactment of BMA 1966. Every cited case dealt with a merger of banks involving a large city in a heavily populated metropolitan area, excepting only *Lexington* and *Jackson.* Fayette County, Kentucky, in which the city of Lexington is located, has about the same area as Twin Falls County; however, a substantial area in south Twin Falls County is mountainous with few residents. At the time *Lexington* was decided the city of that name had four or five times the present population of Twin Falls city. In facts, *Jackson,* to a considerable extent, parallels the present case. Holdings therein support some contentions of defendants and intervenor in this case, as will be shown later in this decision.

■ The parties, particularly Justice, on some points of law rely on words or phrases taken from opinions in *Philadelphia* and other cases and from these draw inferences and analogies they contend should be applied to this case, without consideration of the evidence upon which the language or ruling was based, or the evidence in this case, or the extreme

disparity in comparability between banking practices, needs and requirements in rural towns and areas and those in densely populated cities in metropolitan areas. Such inferences and analogies may be valid in some instances and in other instances not so. However, it is basic to *de novo* trial in federal district courts that every case be considered and determined in every court upon the specific facts found from the evidence presented in that particular case.

Under the cited statutes and decisions, four ultimate and controlling questions of fact and law are presented for determination by the Court: (1) What are the product-services that constitute the appropriate line (or lines) of commerce in this case? (2) What is the relevant geographic market area (or areas) in this case? (3) Will the proposed merger tend to substantially lessen competition? (4) Are the anticompetitive effects of the merger, if any, clearly outweighed by probable and substantial improvements meeting the convenience and needs of the community to be served?

Each of these questions involves a number of contentions and issues raised and stated by the parties in the final pretrial order approved by counsel for all parties and entered by the Court. To provide a clear and specific statement of the issues presented on the evidence adduced and the contentions of all parties as to each issue the Court prepared a draft thereof. At the close of the evidence copies of the draft were submitted to counsel for approval or modification as counsel might suggest before submission of post-trial briefs, proposed findings and conclusions and final argument. In final form the statement includes all proposed revisions and has been approved without reservation by counsel for all parties. Each of the ultimate issues and all contentions pertaining thereto will be determined by the Court under a heading stating the issue and in a footnote all contentions as to each issue will be fully set forth as stated by counsel.

Facts stated in the Court's determination of issues and contentions are based on agreed facts in the pretrial order, stipulations of counsel, exhibits admitted in evidence and upon this Court's appraisal of the credibility of the witnesses and the weight and significance of their testimony.

Dr. Baxter, defendants' expert, has considerably more knowledge and experience and is more sound in facts supporting his opinion testimony than either of plaintiff's experts, Dr. Johnson and Dr. Hall, on all ultimate issues and matters of expertise in this case. The Court finds the testimony of Baxter on essential issues is more credible and acceptable than and preponderates over any contrary testimony of Johnson and Hall.

State Finance Director Silva did not impress the Court favorably in his demeanor as witness and his often evasive testimony is found to be not entirely disinterested and objective, and not well based in facts. In all significant particulars his testimony is not found credible or acceptable.

On the admitted economic and statistical data, facts uncontradicted and those found by the Court, it is now further found shown by a preponderance of the credible evidence to be reasonably probable that: (1) the population and economic growth of Twin Falls city and county will continue, as in many years past, to be slow and moderate; (2) economic, business and financial conditions will not support a fifth bank, *de novo* or branch, in Twin Falls city, or justify state or federal authorization thereof, at any time in the foreseeable future; (3) if and when a fifth bank be authorized to do business in Twin Falls city it will be by state and not by federal authority; (4) there is presently no reasonable probability whatever that a fifth bank in Twin Falls city will be a branch office of Idaho First, and Idaho First is not now, and in the foreseeable future will not be, a potential entrant into the banking business in Twin Falls city.

I. What are the product-services that constitute the appropriate line (or lines) of commerce in this case?[1]

**Decision:** Demand deposits, which only commercial banks may accept, are an appropriate product-service constituting a line of commerce in every bank merger case. However, when in a particular case banks in the relevant market area substantially compete with other financial concerns, as well as with each other, in providing product-services other than demand deposits, there is cross-elasticity of demand for such product-services and each of the product-services in which banks so compete also constitutes an appropriate line of commerce in that particular case. It is found and held to be so in the present case.

While on the evidence in some cases the aggregate ("cluster") of commercial bank product-services has been held the only appropriate line of commerce, the evidence in this case shows without any substantial contradiction that all banks in Twin Falls city are in substantial and vigorous competition with financial concerns other than banks in providing several product-services other than demand deposits. A preponderance of credible evidence in this case shows that savings and loan associations, trust and savings banks, credit unions, Production Credit Associations, the Federal Land Bank, life insurance companies, mortgage companies, and to a lesser extent other financial concerns, compete with commercial banks in providing one or more of the following product-services: interest-bearing deposits, agricultural production loans, farm real estate loans, residential and commercial real estate loans, automobile and other consumer loans, and student loans. In some of these lines of commerce financial concerns other than banks secure very substantial shares of the total volume in the Twin Falls market area.

**The intent and purpose of Congress, if any, in omitting the phrase "in any line of commerce" in BMA 1966 has been discussed at length in some district

---

1. *Plaintiff contends:* (1) Commercial banking is an appropriate line of commerce in this case; (2) The cluster or combination of products and services offered by commercial banks is unduplicated in any other financial institution; (3) Of all financial institutions only commercial banks are authorized to accept demand deposits; (4) Commercial banks are the major source of short term credit to small and medium-size businessmen; (5) While other financial institutions offer products and services similar to some of the products and services offered by commercial banks, the latter offer terms or conditions different from those offered by the other financial institutions; (6) Commercial banks compete among themselves with respect to the cluster or combination of commercial banking services, but they may compete with another financial institution with respect only to one service or a limited number of services; (7) Absence of the phrase "in any line of commerce" from the Bank Merger Act of 1966 does not mean that commercial banking is not an appropriate line of commerce within which to evaluate the effects of a commercial bank merger.

*Defendants contend:* (1) (a) That each of the major products and services offered by commercial banks constitute separate lines of commerce which must be analyzed in their particular competitive context; (b) That no meaningful product advantage is obtained in competing within these separate lines of commerce because of any particular conglutinations of them; (c) Commercial banking is not a line of commerce but a combination of several lines of commerce; *(2) There is a cross-elasticity of demand for duplicated services between commercial banks and other financial institutions; * (3) There is no significant difference between duplicated products and services offered by banks and other financial institutions; * (4) By excluding the phrase "in any line of commerce" from the Bank Merger Act, Congress contemplated that the broader field of financial institutions generally should be considered in evaluating the effects of a bank merger.

*Intervenor contends:* (1) Financial institutions compete substantially among themselves for their particular services and each such service constitutes an appropriate line of commerce.

* Identical contention of defendants and intervenor.

court decisions.[2] The Supreme Court question in *Houston*, the first and only found it unnecessary to determine the case in which the question is mentioned in an opinion by that court. Determination of that particular question is not necessary in this case because the evidence clearly shows actual, direct and substantial competition between banks and other financial concerns in providing the product-services above referred to. What product-services in which banks may compete in a relevant market at a given time or period, is not a question of theory but of fact which can only be determined by a court on evidence. Neither the provisions of the Clayton Act nor those of BMA 1966, nor the provisions of both acts read together as they should be, indicate the ultimate issue stated above may be appraised unrealistically or established by fiat. On the contrary, it is clear that Congress, by providing for *de novo* review of bank mergers in trial courts, intended that those courts should follow long-estab-

lished and well-known principles of federal trial court decisional procedure. Those principles require a pragmatic, facts-of-life analysis and determination of all fact questions involved in applying the controlling Congressional enactments to the evidence before the Court in each particular case.

II. What is the relevant geographic market area (or areas) in this case?[3]

■ Decision: (1) For purposes of measuring either actual or potential competition there is no relevant geographic market area in this case sufficiently significant economically, in population or otherwise, to constitute a "section of the country" within the meaning of either the Clayton Act or BMA 1966 reasonably interpreted in the light of Congressional intent clearly and sharply shown in the legislative history of the Clayton Act.

The above decision is dispositive of this action. However, for the purposes of determining all other issues and con-

2. *Provident,* supra 280 F.Supp. at 7; *Crocker-Anglo,* supra 277 F.Supp. at 154; United States v. Third National Bank of Nashville, 260 F.Supp. 869, 878, n. 5 (M.D.Tenn.1966)

3. *Plaintiff contends:* (1) "Section of the country" is the geographic market in which the competitive effects of a merger are felt; (2) The area delimited by the counties of Blaine, Camas, Gooding, Lincoln, Minidoka, Jerome, Twin Falls and Cassia, excluding the mountainous, nonarable, sparsely inhabited portions to the north, southwest and southeast, referred to in the trial and hereafter as the "Johnson Area" is the relevant geographic market within which to assess the effects of this merger on existing competition and the potential for greater competition between defendants; (3) The area consisting of the City of Twin Falls and its environs is the relevant sub-market within which to assess the effects of this merger on potential competition; (4) Both the "Johnson Area" and the City of Twin Falls and its environs are clearly sections of the country within the intendment of Section 7 of the Clayton Act and the Bank Merger Act.
 *Defendants contend: As to Actual Competition:* (1) The merging banks

are not in substantial and actual competition anywhere in the United States; therefore, there is no relevant geographic market within which the impact of the merger on actual competition may properly be measured; *As to Potential Competition:* (2) The City of Twin Falls and its environs which are taken to be (3) The Zip Code Areas of Twin Falls, Filer, Jerome, Kimberly, Hansen, Eden, Hazelton and Murtaugh, hereafter "Zip Code Area."
 *Defendants further contend:* (4) The "Zip Code" or "Twin Falls City" areas are not sufficiently economically or demographically significant to constitute a "section of the country" within the intendment of Section 7 of the Clayton Act and the Bank Merger Act.
 *Intervenor contends:* (1) The City of Twin Falls and its environs or at most: (2) The Zip Code Areas of Twin Falls, Filer, Jerome, Kimberly, Hansen, Eden, Hazelton and Murtaugh, hereafter "Zip Code Area" is the area for measuring the elimination of potential competition; (3) There is no actual substantial competition presently existing between Idaho First and Fidelity, therefore there is no geographic area in which to measure the elimination of actual substantial competition.

tentions presented by the parties (*Nashville*) it will be assumed there is some relevant market area in the case which is a "section of the country" within the Clayton Act and BMA 1966.

■ (2) Idaho First and Fidelity are not now and never have been in *actual* substantial competition between themselves in any market area. Both banks derive a small percent of their business volume from residents in the overlap of their respective service areas but the amount of that business for each bank is so small as to be insignificant for the purposes of any issue in this case.

■ (3) All parties appear to agree, and the Court finds and holds, that the city of Twin Falls and its environs is the relevant geographic market area within which to measure the direct and immediate effects of the proposed merger upon *potential* competition. Under the evidence, the environs of Twin Falls city are found to be, at most, not greater than the "Zip Code Area" as specified in the contentions of defendants and intervenor in footnote 3.

In 1950 Congress eliminated "community" from the phrase "in any section or community" in Section 7 of the Clayton Act and changed it to read "in any section of the country." In considering the effect of that 1950 amendment the Supreme Court recently said:

"Thus, although the geographic market in some instances may encompass the entire Nation, under other circumstances it may be *as small as a single metropolitan area*." (emphasis supplied). Brown Shoe Co. v. United States, 370 U.S. 294, 337, 82 S.Ct. 1502, 1530, 8 L.Ed.2d 510 (1962).

Twin Falls city and its immediate surrounding area is certainly no more than the kind of "community" Congress eliminated from the scope of the Act. No geographic market area asserted by any party in this case, even the largest, comes near qualifying as a "metropolitan area" in any particular whatever.

■ In merger cases the relevant geographic market area must " 'both correspond to the commercial realities' of the industry and be economically significant." Brown Shoe, supra at 336, 82 S.Ct. at 1530. In *Philadelphia* the Supreme Court said:

"some fair intermediate delineation which avoids the indefensible extremes of drawing the market either so expansively as to make the effect of the merger upon competition seem insignificant, because only the very largest bank customers are taken into account in defining the market, or so narrowly as to place [the merging banks] in different markets, because only the smallest customers are considered." *Supra* 374 U.S. at 361, 83 S.Ct. at 1740.

In defining the market in that opinion the Court looked to the area where "the vast bulk of [the banks'] business originates * * *," and later in *Lexington*, to the area where "[p]ractically all of the business of the banks in Lexington originates * * *".

In the present case each bank in Twin Falls city draws over 90% of its total business from the "Zip Code Area" and probably the great bulk of that business from the city and its immediate surrounding area. Competition in the same area by other financial concerns is substantial, e. g., in 1969 such concerns had 85.9% of the mortgage loans in Twin Falls County, and in 1968 one of the savings and loan associations in Twin Falls city alone had over 33.5 million dollars in savings deposits. Idaho First has three offices in South Central Idaho, one within 45 road miles of Twin Falls city and two within 20 miles, but those offices draw less than 5.5% of their total deposits from residents in the "Zip Code Area" and make less than 9% of their total loans to residents in that area.

Justice contends that the factor of convenience in South Central Idaho is less significant than it would be in urban areas and in this case requires the Court to find a relevant geographic area for measuring actual competition considerably greater in extent than the Zip Code Area, i. e., the "Johnson Area." The Court finds that contention clearly nega-

tived by the undisputed statistical data as stated in the Findings of Fact. Indeed, a preponderance of the testimony of farmers, ranchers, businessmen and bankers shows that the factor of convenience makes the relevant market area in which to measure either actual or potential competition considerably less in extent than either the "Johnson Area" or the "Zip Code Area."

4. *Plaintiff contends:* (1) Defendants are presently competitive commercial banking alternatives for farmers and ranchers located throughout the "Johnson Area"; this competition would be eliminated by the merger of defendants; (2) Because Twin Falls city is the primary trade center for the "Johnson Area," farmers and ranchers located within this area could do their banking in Twin Falls city; (3) There is potential for greater competition between defendants in providing commercial banking services for farmers and ranchers throughout the "Johnson Area"; this potential for greater competition would be eliminated by the merger of defendants; (4) Idaho First is a potential entrant into Twin Falls city; (5) There are only two potential entrants into Twin Falls city; Idaho First is the more likely entrant; (6) As the most likely potential entrant into Twin Falls city, Idaho First exerts a competitive influence on the banks in Twin Falls; this influence would be eliminated by the merger of defendants; (7) The entry of Idaho First into Twin Falls city would: (a) increase competition generally in Twin Falls, and (b) increase competition between defendant banks; (8) The merger of defendants would eliminate the competitive benefits of Idaho First's *de novo* entry into Twin Falls city; (9) Fidelity is a potential merger partner with smaller banks in Idaho; (10) As a potential merger partner with smaller banks, Fidelity is a source of stronger bank competition in markets not served by Fidelity; (11) The proposed merger will substantially increase existing concentration in commercial banking within the "Johnson Area"; (12) The proposed merger will alter the balanced banking structure presently existing in Twin Falls city; (13) The proposed merger will eliminate a significant competitive factor in the "Johnson Area"; (14) The proposed merger may "trigger" other bank mergers within the "Johnson Area" and elsewhere in Idaho. Competition will not be lessened because: *(1) Idaho First and Fidelity National

III. Will the proposed merger tend to substantially lessen competition?[4]

Decision: The proposed merger will not tend to substantially lessen competition in any line of commerce in any geographic area relevant to this case.

 Justice has the burden of proof as to the ultimate issue stated above and each supporting contention below stated

do not presently and substantially compete with each other in any banking market; (2) The great majority of those people who utilize the services performed by commercial banks, including farmers and ranchers, travel no further than they must to obtain those services; (3) The number of banks presently existing in Twin Falls city is, if not excessive, marginally justified at best; (4) Idaho First is not a reasonably likely potential entrant into Twin Falls city by *de novo* branching in the reasonably foreseeable future; *(5) Fidelity National is not a reasonably probable potential competitor within banking markets not presently served by Fidelity within the reasonably foreseeable future; (6) Commercial banking in the State of Idaho, the "Johnson Area" or in Twin Falls and its environs is not presently "concentrated," if that term is to be taken to mean served by fewer banking alternatives than they might be. People within these areas are in fact served by more banking alternatives than were available thirty years ago; (7) The proposed merger will increase competition through the introduction of products and services not presently available from Fidelity National; (8) Standing alone, concentration data are meaningless; Anti-trust theory requires a further, specific showing not made here that a merger will have anticompetitive effects.

*Intervenor contends:* (1) The number of banks presently existing in Twin Falls city is at an optimum; (2) Idaho First is not a reasonably probable potential entrant into Twin Falls city by *de novo* branching within the reasonable foreseeable future; (3) Commercial banking in either the Twin Falls and environs area or the Johnson Area is not presently concentrated; (4) The proposed merger will increase competition for the services not available and through the introduction of products and services not presently available from Fidelity National.

* Identical contention of defendants and intervenor.

in footnote 4. As to these contentions, the Court finds that a preponderance of the evidence shows; or, at a minimum, Justice has failed to prove its contentions to the contrary by a preponderance of the evidence; that: (1) the defendant banks are not in substantial actual competition with each other in any relevant market area; (2) neither Fidelity nor Idaho First is a reasonably probable potential entrant into any banking market area not now served by them which are relevant to this case; (3) the banking market in Twin Falls and its environs is not presently concentrated; (4) the replacement of Fidelity by Idaho First will not significantly alter the present degree of concentration in banking business in the Twin Falls area; (5) the merger will not trigger other mergers; (6) Idaho First will not be less competitive in seeking agricultural business than Fidelity is and has been; (7) any disruption in the "balanced structure" of large and small banks will not significantly affect competition in Twin Falls city and therefore the substitution of Idaho First for Fidelity will not injure the economic structure of Twin Falls city and its environs; and (8) the overall effects of the merger will favor rather than restrict competition in Twin Falls city and environs.

The above rulings determine every contention raised by the parties pertaining to the above stated ultimate issue. Each ruling is supported in detail and amplified in the Findings of Fact and Conclusions of Law. Rulings (1) and (8) above are discussed elsewhere in this DECISION. Of the twelve remaining contentions of Justice, specified in footnote 4 below, seven pertain to potential competition, as to which vital facts found by the Court have previously been stated and discussed in this DECISION. In these circumstances, only brief further comment as to the rulings on contentions of Justice as to the above stated ultimate issue, seems necessary or indicated.

*Potential Competition:*

The only bank merger decisions in which potential competition is discussed are *Maryland, Jackson* and *Crocker-Anglo.* In each of those cases the merger in question was approved by the district court and Justice did not seek review.

In *Brown Shoe* the Supreme Court said:

"Congress used the words 'may be substantially to lessen competition' to indicate that its concern was with probabilities, not certainties. Statutes existed for dealing with clear-cut menaces to competition: *no statute was sought for dealing with ephemeral possibilities.* Mergers with a probable anticompetitive effect were to be proscribed by this Act * * *" (Emphasis supplied.) *Supra* 370 U.S. at 323, 82 S.Ct. at 1522.

In order to show Idaho First may be a potential competitor in the relevant market it must be found reasonably probable that Idaho First may enter the Twin Falls market in the foreseeable future by means other than the merger in question. The only way in which Idaho First *can* enter Twin Falls city, other than by merger with Fidelity or another existing bank in Twin Falls city, is by a *de novo* branch which would add a fifth bank in the city. Justice has made no contention, or even suggestion, that Idaho First may merge with some existing bank other than Fidelity in Twin Falls city; therefore, if Idaho First be a potential entrant into Twin Falls city, it must be as a fifth bank which cannot occur without approval of the Comptroller. The evidence overwhelmingly shows there is no reasonable, or even a scintilla, of probability the Comptroller will approve Idaho First as a fifth bank in Twin Falls city in the foreseeable future, or ever.

If, despite the circumstances stated in the preceding paragraph, Idaho First can be considered a potential competitor "standing in the wings," as asserted by Justice, it casts a faint shadow on competition not yet seen or felt by any bank

now in Twin Falls according to the testimony of high-ranking officers of each bank. Therefore, any possible lessening of competition after the merger caused by removal of Idaho First from "the wings" will be insubstantial, if not insignificant, and most certainly will be clearly outweighed in the public interest by far less new and improved services the merger will bring to Twin Falls community, than found by the Court later in this DECISION.

In the population bracket (15,000 to 25,000) which includes Twin Falls city, out of 218 cities in the nation only 3 have 5 banks and only 25, other than Twin Falls, have 4 banks. No city in the nation the same size as Twin Falls, or smaller, has 5 banks. As shown in detail in the Findings of Fact, every one of the 29 cities referred to has a substantially greater volume of banking business in every significant category or a substantially higher ratio of banking business to population than Twin Falls city.

In the stated circumstances and considering that the Comptroller has refused to permit Idaho First to enter Twin Falls city as a third and recently as a fourth bank, it is inconceivable, let alone reasonably probable, that at some time in the foreseeable future the Comptroller will permit Idaho First to become a fifth bank in Twin Falls city.

*Concentration:*

The existence of four banking alternatives in Twin Falls city results in a very high ratio of banking offices to population, not exceeded elsewhere in the nation, and there is no disproportionate division of the market for banking services among the four alternatives. The

greater market share of bank business in Twin Falls city and environs is presently held by Fidelity and Twin Falls Bank & Trust, both of which are relatively small locally owned banks. The balance of business is held by branches of the other two largest banks in the state and the evidence shows that their proportionate share of business is increasing while the shares of the local banks are declining. Since Idaho First is not presently doing business in Twin Falls and its environs, in effect it will be a substitute for Fidelity after the merger, and no significant change in proportionate market shares will result after the merger other than from procompetitive factors. The evidence clearly shows that because of the entry of additional banks into Twin Falls city in 1959 and 1969, the trend of the banking market in Twin Falls city and its environs has been toward lesser rather than greater concentration.

The remaining contentions of Justice that the merger may (1) "trigger" similar mergers; (2) disrupt an alleged "balanced structure" of banking in Twin Falls city; and (3) eliminate Fidelity as a potential merger partner with smaller banks amount to no more than "ephemeral possibilities" and are not reasonably probable realities. If these alleged results actually occur, at most they will faintly affect competition, if at all.

IV. Are the anticompetitive effects of the merger, if any, clearly outweighed by probable and substantial improvements meeting the convenience and needs of the community to be served? [5]

■ Decision: The evidence shows that anticompetitive effects of the merg-

---

5. *Plaintiff contends:* (1) Idaho First would not bring to Twin Falls city and its environs any services or benefits which are not already available or which are not likely to be made available by the banks located therein; (2) Defendants and intervenor have not demonstrated that the benefits and improvements which would allegedly accrue to Twin Falls city and its environs as a result of this merger could not or would not be achieved by means less anticompetitive than Idaho First's acquisition of Fidelity; (3) Fidelity, as a locally owned and operated bank, is dependent upon the local area and, thus must be very responsive to predominant community needs; (4) Defendants and intervenor have not demonstrated

er, if any, will be clearly outweighed in the public interest by improvements in banking services meeting the convenience and needs of the Twin Falls community (1) by improving the quality of bank services presently available; (2) in supplying needed services not presently available, or if so, not now provided in a convenient and economical manner; and (3) will materially increase competition among banks providing banking services in the community. The Court finds that the improvements referred to in some particulars cannot be, and in others will not be, provided by alternative means.

As for many years past, the banking services Fidelity offers to customers are markedly limited in scope as compared to the services offered by other banks in the commuity. To a large extent, Fidelity has and now does restrict its efforts and services to those of primary value to farmers and ranchers. Fidelity's agricultural production loans and its real estate and consumer loans are generally related to agricultural activities. This restriction is due in part (1) to the subjective attitude and policies of the owners and officers of Fidelity; (2) to lack of personnel qualified for other services; and (3) expense of providing such services efficiently and economically. Fidelity does not provide at all, or only to a limited extent, such services as: a trust department; real estate and construction financing, including FHA and VA loans; consumer and installment loans; purchase of dealers' paper; automobile and mobile home financing; industrial and municipal loans. To the extent that Fidelity provides these services, it is necessary in many instances for Fidelity to secure financial or technical assistance from other banks or financial concerns more capable of providing the particular service required. On the other hand, Idaho First is presently and independently capable of providing all these services in greater measure and better quality. Idaho First maintains a staff of employees having specific training and extensive experience in each of the services above referred to.

Perhaps most important of all, Idaho First will immediately provide much greater lending limits for the accommodation of Twin Falls customers, some of whom have been obliged to seek distant banks, at times in other states, to provide their larger loan needs. This factor alone will greatly increase competition among banks in Twin Falls, particularly those having higher lending limits than Fidelity, and competition will be further increased by the wider and better services which Idaho First will provide to the community.

The evidence shows that the entry of Idaho First into Twin Falls will make available other services which are needed but presently are not adequately provided by any Twin Falls banks. Among

---

that Fidelity has a management succession problem.

*Defendants contend:* * (1) The merger would provide new and expanded products and services, among which are: (a) Trusts (a full-time resident trust officer); (b) FHA-VA Loans; (c) Consumer and Installment Lending; (d) Credit Cards; (e) Non-Agricultural Lending; (f) Larger Lending Limit; (g) Regional Computer Services; (h) Business Assistance and Investment Advice; (i) Accounts Receivable Financing; *(2) Some of the above are not now available in Twin Falls; *(3) Existing products and services of Fidelity National would be substantially improved in quantity and quality.

*Intervenor contends:* (1) The merger would be procompetitive by providing needed competition for services now available and adding other services to the competitive picture; (2) Assuming the anticompetitive effects alleged by plaintiff, the convenience and needs of the community to be served by the merger clearly outweigh in the public interest any such anticompetitive effects; (3) Fidelity has no alternative means of supplying the needed convenience and needs except by this merger.

* Identical contention of defendants and intervenor.

these are regional computer services, investment advice, commercial counseling and accounts receivable financing.

*Nashville* held that to outweigh any anticompetitive effects, a merged bank must be more than merely a better bank with better services. As shown above, the Idaho First branch not only will provide new services, the need for which is presently substantial and will increase in the future, but also will increase competition in services now provided by all banks in the community.

There is no evidence in the case which amounts to more than speculation or conjecture that any of the additional services which Idaho First will presently provide in the Twin Falls community may at some unforeseeable time in the future be provided by alternative means with less anticompetitive effect than by the merger. No witness testified directly, explicitly and without qualification that any bank or financial concern is prepared to and will provide any single one of the new, better and wider services that will become available to the community immediately when Fidelity becomes a branch of Idaho First. The Court, after carefully considering all of the contentions of Justice on this particular issue, finds and holds that a preponderance of the evidence shows there is no reasonble probability that any substantial part of the additional services and competition which Idaho First will provide in Twin Falls may be provided by any other means in the reasonably foreseeable future.

*Conclusion:*

The Court finds no basis in fact or law for enjoining or delaying consummation of the merger agreement of Idaho First and Fidelity approved by the Comptroller. Accordingly, it is hereby

Ordered that this action be dismissed with prejudice and that the automatic statutory stay per 12 U.S.C.A. § 1828(c) (7) (A) be vacated effective ten (10) days from the entry of Judgment herein.