**UNITED STATES of America,**
**Plaintiff,**

v.

**UNITED VIRGINIA BANKSHARES IN-**
**CORPORATED, The Peoples National**
**Bank of Manassas, et al., Defendants.**

**Civ. A. No. 85–70–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

Sept. 8, 1972.

Brian P. Gettings, U. S. Atty., Alexandria, Va., Richard W. McLaren, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for plaintiff.

Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., for defendants.

Philip L. Roache, Treasury Dept., Washington, D. C., for intervenor.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, District Judge.

This antitrust suit challenging the acquisition of Peoples National Bank of Manassas by United Virginia Bank Shares Incorporated of Richmond was brought by the Department of Justice. The acquisition was approved by the Board of Governors of the Federal Reserve System and by the Comptroller of the Currency.[1]

Upon the filing of the suit the consummation of the acquisition automatically halted under the provisions of the Bank Merger Act of 1966, 12 U.S.C. § 1828(c)(7)(A). Whereupon the Comptroller[1] moved to lift the stay pending the outcome of this litigation. The motion was granted and the acquisition was completed March 1, 1971. Since that date Peoples has operated as a UVB affiliate.

The complaint alleges that the acquisition will damage the potential competition of UVB within the relevant market —That UVB at some future date will be likely to become an actual competitor within the market by the establishment of a de novo bank and thus the elimination of UVB as a potential entrant will remove this significantly pro-competitive possibility.

In addition, the complaint alleges that the acquisition will entrench Peoples, an already dominant concern within the market, and will tend to raise the barriers to entry into the relevant market by other prospective competitors. Further, that Peoples will be eliminated as an individual competitive factor within the relevant market and that the acquisition will trigger a train of acquisitions across the State of Virginia.

The defendants deny the acquisition will have any such effects, and contend instead that it would be pro-competitive and would in the final analysis serve the convenience and the needs of the community to an extent that any incidental anti-competitive effect will be outweighed.

■ Although the antitrust issues thus presented are the same as confronted the regulatory agencies [2] under the Bank Holding Act and the Bank Merger Act, this Court must determine the competitive effects of such acquisition de novo in accordance with the standards of the Clayton Act, § 7, 15 U.S.C. § 18.

■ A merger otherwise proscribed under § 7 of the Clayton Act, however, may still be approved if the antitrust effects are clearly outweighed by the acquisition's probable effect in meeting the "convenience and needs of the community to be served."

Therefore, weighing the evidence here presented, the Court finds that Prince William County—Not that portion thereof lying to the north and west of Occoquan Creek and Cedar Run—Is the geographical market or "section of the county" in this case.

All of the officials of the banks now operating in the county so testified. The majority of the economic experts was of the same opinion.

Prior to 1960 when Prince William was rural, banks in Quantico and Occoquan did most of their business in the eastern section of the county—Banks in Manassas and Nokesville confined their activities to the western section of the county.

Now Prince William is a rapidly growing section of Metropolitan Washington—It will soon become a part of northern Virginia's contiguous suburban mass.

Prince William banks are not affiliated in one way or another with large banking organizations—All have branch-

---

1. The Comptroller of the Currency sought and was granted permission to intervene.

2. The acquisition of Peoples by UVB was approved by the Board of Governors of the Federal Reserve System and by the Comptroller of the Currency.

es throughout the county.[3] (Virginia law permits county-wide banking.) All seek business, deposits and loans, and render banking services on a county-wide basis—All compete county-wide—What one does in the east, one does in the west—Hence service charges, banking hours, etc., are the same throughout the county—Therefore the county is the "area" in which freedom of expansion is uninhibited.

It makes little difference whether Prince William or the Manassas area is considered as the relevant geographical market—The result in this case would be the same.

Much was said and many charts were exhibited and explained during this hearing by the various parties in their endeavor to aid the Court in determining whether banking in Prince William or in the Manassas area is highly concentrated.

The preponderance of the evidence indicates that it is not, and the Court so finds.

■ A concentrated market is one in which a few banks control such a large proportion of the assets they are able to exercise power and dominate the market. There is no creditable evidence in this case indicating that Peoples, alone or together with a few other banks, has dominated the banking market in the Manassas area or in Prince William by setting prices or by determining the quality and scope of banking services offered in those areas.

Although Peoples had 51% of the Manassas area deposits in 1960 and First Virginia and Nokesville had 41% and 8%, respectively, this was not really a concentrated market as there were only twelve million in deposits to go around—By 1970 there were five banking organizations in the Manassas area —Peoples then had only 41% of the deposits—The same decline for Peoples occurred in Prince William.

■ In determining whether a market is concentrated, one should consider the type of industry served, the size of the geographic market and the total volume of business available for competition·in that market.

When considering the banking industry, as here, one must take into consideration that banking is regulated by the State and Federal governments, and as banking markets grow the number of competitors increases as the regulatory agencies permit.

Instead of being highly concentrated, commercial banking in both the Manassas area and Prince William is highly competitive. The continued population and industrial growth will keep "this market" in a very fluid condition for the foreseeable future.

Reduced to simplicity, this case is another attempt on the part of the Department of Justice to engraft the theory of potential competition on the banking industry. Five previous cases,[4] designed to accomplish this end, have been tried —all without success.

■ The Department concedes that the acquisition here under consideration does not involve direct, horizontal competition or the elimination thereof— They argue that since only four banking organizations, including UVB, have the capability and incentive to be regarded as significant potential entrants in this market, it follows that the acquisition of Peoples by UVB will result in the loss of one of the few possible sources of deconcentration through actual entry and one whose presence at the edge of the

---

3. First Manassas Bank & Trust Company, the newest bank, has applied for a branch in the eastern part of the county.

4. United States v. First Nat'l Bancorporation, 329 F.Supp. 1003 (D.Colo.1971); United States v. First Nat'l Bank of Maryland, 310 F.Supp. 157 (D.Md.1970); United States v. Idaho First Nat'l Bank, 315 F.Supp. 261 (D.Idaho 1970); United States v. First Nat'l Bank of Jackson, 301 F.Supp. 1161 (D.Miss.1969); United States v. Crocker-Anglo Nat'l Bank, 277 F.Supp. 133 (N.D.Cal.1967).

market restrains existing competitors from exploiting their market power.

Although it is somewhat debatable whether "the potential competition" theory is applicable to banking, the Court here finds that UVB is not a potential entrant in the Manassas and/or Prince William market.[5]

Clearly, UVB has the financial ability to enter the Prince William market de novo—That alone, however, does not make it a potential entrant. Neither does the acquisition of Peoples prove that UVB had the necessary desire to enter that market de novo or by "toehold acquisition"—It proves only that UVB desired to enter via acquisition of Peoples.

The record shows that UVB has never established a de novo bank and that it will not as a matter of corporate policy enter the Manassas or Prince William market de novo if denied entry by acquisition. The cost of entry de novo according to UVB's unquestioned figures makes such entry unattractive—Further, there is grave doubt based upon the evidence presented that de novo entry, if sought, would be approved in the foreseeable future by the requisite regulatory agencies.

As to potential entrants, ability-wise, there are more than four—There are nearly forty, including Fidelity American Bankshares, Central National of Richmond, National Bank and Trust Company of Charlottesville, Southern Bankshares, Colonial American of Roanoke, National Bank of Fairfax, and Northern Virginia of Springfield—Deposit of twenty million dollars is sufficient to make one a potential entrant, ability-wise—Further, there is an unascertainable number of local groups capable of establishing a new bank in Prince William County.

"Toehold acquisition" (another method of entering the market) was not possible in Prince William at the time of this hearing for the simple reason there was no independent bank operating in Prince William at that time. The contention that UVB could obtain acquisition of the new bank in the process of opening was sheer speculation. There was no evidence that they would sell to UVB or to any other banking organization or that they would consider affiliating with a holding company.

The claimed deterrents to other banks entering the market are clearly refuted by the opening of two additional banks in Prince William since the date of the announcement by the Federal Reserve System and the Comptroller of the Currency of the approval of UVB's acquisition of Peoples.

The opening of numerous new banks in other markets served by UVB affiliates clearly indicates that the presence of a UVB affiliate in Prince William will not scare off other potential entrants that have the ability and desire to enter that market.

Due to the highly competitive nature of banking in Prince William, the so-called "standing in the wings" theory has no application to this case. All of the bankers and most of the economists so testified.

In considering the potential competition phase of this case, the Court has taken into consideration such non-banking competitors as savings and loan associations, credit unions, small loan companies, etc. The Piedmont Savings and Loan Association located in Manassas is one of the largest savings and loan associations in Virginia—The Commonwealth Savings and Loan Association accepts real property as loan collateral—Makes loans for mobile homes—Makes loans on raw land—And makes college education signature loans. It is doubtful if any bank would enter the Prince William market without considering these non-banking institutions.

---

5. Judge Lee Lovenger, in an article in the Arizona Law Review, 12 ALR 443 (1970), comments that the "potentiality" theory is a kind of legal ESP—Extra-sensory proof—It relies on potentiality instead of reality, substitutes the ectoplasm of hypothesis for the protoplasm of fact, and offers faith instead of proof.

No evidence was offered to support the plaintiff's contention that this acquisition would trigger a trend of acquisitions across the State.

Instead of lessening competition, restraining trade and tending to create a monopoly in the Manassas area and/or in Prince William, the evidence in this case clearly shows that acquisition of Peoples by UVB has had a pro-competitive effect. Peoples now has better management, access to more assets and a better opportunity to compete with some of the major banking chains in Virginia —New loan programs have been inaugurated, such as auto loans—Airplane, boat and mobile home financing, etc. Banking expertise regarding the handling of public funds—Sophisticated mortgage lending—And expanded trust services are now available, on a more competitive basis.

The record here made is replete with evidence showing that the acquisition of Peoples by UVB has brought new and/or improved banking services to the people of Prince William County, Virginia—The convenience and needs of the community served clearly outweigh the anti-competitive effects, if any, of the acquisition in question.

The plaintiff having failed to prove that the acquisition of Peoples by UVB is violative of the antitrust laws of the United States, and the Court being of the opinion that the acquisition as approved by the Board of Governors of the Federal Reserve System and the Comptroller of the Currency is in the public interest and ought to be approved.

It is so ordered.

If either side desires more detailed findings of fact and conclusions of law than herein stated, counsel for the defendants and the intervenor should consolidate their proposed findings, eliminating all duplications, submit the same to the attorneys for the Department of Justice for their comments and objections, and then to the Court for adoption and entry.