**In re GRANADA WINES, INC., Debtor.**

**Bankruptcy No. 82–577–HL.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 7, 1983.

Vincent J. DiMento, DiMento & Sullivan, Boston, Mass., for Granada Wines, Inc., debtor.

Robert M. Gargill, Choate, Hall & Stewart, Boston, Mass., for Billmar, Inc.

Ilene Robinson, Grady, Dumont & Dwyer, Boston, Mass., for the New England Teamsters and Trucking Industry Pension Fund.

## MEMORANDUM ON OBJECTION OF NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND TO CONFIRMATION OF AMENDED PLAN OF REORGANIZATION

HAROLD LAVIEN, Bankruptcy Judge.

The New England Teamsters and Trucking Industry Pension Fund (Pension Fund) has objected to the confirmation of the Amended Plan of Reorganization of Granada Wines, Inc. (Granada). The Pension Fund objects to the treatment of its claim under the plan.[1] The Pension Fund filed a proof of claim for $248,614 as a general unsecured claim. This claim represents the withdrawal liability incurred by Granada when it withdrew from the Pension Fund and ceased making contributions. The liability arises pursuant to the Multi-Employer Pension Plan Amendments Act (P.L. 93–364) (MPPAA) amending the Employee Retirement Income Security Act (ERISA),

which provides that if a withdrawal occurs, the plan must determine the amount of the employer's liability. 29 U.S.C. §§ 1381, 1382. There is no dispute that the debtor has incurred a withdrawal liability. The dispute is whether under ERISA the Pension Plan's claim should be allowed to a maximum of 50% as the debtor argues, or in full as the Pension Fund argues.

The reorganization plan provided that general unsecured creditors would receive a 30% distribution on their allowed claims whereas the Pension Fund would only receive 15% of its claim. The debtor relies on 29 U.S.C. § 1405(b) in claiming that it is only liable for 50% of the Pension Fund's claim. Section 1405(b) sets out various limitations on withdrawal liability. Because this is an issue of statutory interpretation and Congressional intent, it is necessary to examine the following provisions of Section 1405:

29 U.S.C.

§ 1405. Limitation on withdrawal liability

(a)(1) In the case of bona fide sale of all or substantially all of the employer's assets in an arm's-length transaction to an unrelated party (within the meaning of section 1384(d) of this title), the unfunded vested benefits allocable to an employer (after the application of all sections of this part having a lower number designation than this section), *other than an employer undergoing reorganization under Title 11,* or similar provisions of State law, shall not exceed the greater of—

(A) a portion (determined under paragraph (2)) of the liquidation or dissolution value of the employer (determined after the sale or exchange of such assets), or

(B) the unfunded vested benefits attributable to employees of the employer.

(2) * * *

---

1. Granada has agreed that it will pay the Pension Fund claim as finally allowed by this Court. In light of that agreement, a confirmation order was entered on December 23, 1982.

(b) In the case of an insolvent *employer undergoing liquidation or dissolution,* the unfunded vested benefits allocable to that employer shall not exceed an amount equal to the sum of—

(1) 50 percent of the unfunded vested benefits allocable to the employer (determined without regard to this section), and

(2) that portion of 50 percent of the unfunded vested benefits allocable to the employer (as determined under paragraph (1)) which does not exceed the liquidation or dissolution value of the employer determined—

(A) as of the commencement of liquidation or dissolution, and

(B) after reducing the liquidation or dissolution value of the employer by the amount determined under paragraph (1).

(c) * * *

(d) For purposes of this section—

(1) an employer is insolvent if the liabilities of the employer, including withdrawal liability under the plan (determined without regard to subsection (b) of this section), exceed the assets of the employer (determined as of the commencement of the liquidation or dissolution), and

(2) the liquidation or dissolution value of the employer shall be determined without regard to such withdrawal liability. (emphasis added)

■ Section 1405(a) which provides a limitation on liability when there is a bona fide sale of all or substantially all of the assets is explicitly made inapplicable to Chapter 11 reorganizations.

■ Granada claims that it was insolvent when it withdrew from the Pension Plan and therefore under 29 U.S.C. § 1405(b) its termination liability is limited to 50%. Although Granada may have been insolvent when it withdrew from the plan, it is not undergoing liquidation or dissolution as provided in Section 1405(b). In fact, Granada has been reorganized under Chapter 11, its plan having been funded by a solvent entity. The debtor will continue as a wine distributor although it will not continue some of its past operations. In interpreting the words of a statute, the Court should adopt the literal or usual meaning of words unless that meaning would lead to absurd results. *See Trans Alaska Pipeline Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978); *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965). The plain meaning of liquidation or dissolution is that a corporation is going to cease to do business, its assets are to be sold off, and its existence will have become but a memory. This debtor hopes to survive and continue to do business.

■ The legislative history quoted by the debtor actually supports the Pension Fund. "To qualify for this rule [the § 1405(b) limitation], an insolvent employer need not undergo a formal liquidation or dissolution. It must, however, be insolvent and wind up its business affairs." Joint Explanation of S. 1076: MultiEmployer Pension Plan Amendments Act of 1980, 126 Cong.Rec. S. 10117, 96th Cong. (2nd Sess.) (Daily Ed., July 29, 1980). The debtor argues that since its post-confirmation operations will be substantially changed in that it will no longer employ its own sales or transportation forces, it has wound up its business affairs. Surely contraction for greater efficiency is a sign of management working for survival not surrender. In fact, during the Chapter 11, the case came very close to being converted to a Chapter 7 liquidation because it was not operating and the losses were increasing due to rent and spoilage of inventory. However, the case remained in Chapter 11 because Granada had considerable value as an operating distributor of wines and other alcoholic beverages as was shown by the eventual confirmation of a plan with a deposit of over $1,000,000. Granada will continue to operate as a wholesale distributor of wines and other alcoholic beverages. I find that 29 U.S.C. § 1405(b) is not applicable to the facts of this case and therefore the Pension Fund's claim will be allowed in full.

The allowance of the claim in full is in keeping with the Congressional intent to create and maintain a viable pension system by placing the costs of pension withdrawals on the employers who cause the termination liability to be placed on the fund. The 50% limitation like the Pension Benefit Guaranty Corporation's 30% of net worth limitation, 29 U.S.C. § 1362, and the nonrecognition of penalties in Chapter 7 liquidations, see 11 U.S.C. § 726(a)(4) and § 724(a), are attempts to balance the competing interests of creditors. In Chapter 7, any increase in liability is borne by the creditors instead of the debtor who is responsible for the termination. However, the same rationale does not apply in Chapter 11 where the continuance of the debtor tends to place the cost where it belongs. After all, the continuing debtor can avoid the termination liability by reactivating the pension plan.

■ The debtor's argument that the cramdown provision in 11 U.S.C. § 1129(b)(2)(B)(ii) should permit it to only distribute 15% on the Pension Fund's claim is wrong. The Pension Fund has a general unsecured claim and the debtor is not permitted to unfairly discriminate against a member of the unsecured class. 11 U.S.C. § 1123(a)(4). Once the Court has determined the allowed amount of the Pension Fund's claim, the Fund must be treated the same as the other general unsecured creditors.

■ The debtor's argument that the Pension Fund should be estopped from asserting its claim because it did not raise the objection prior to the confirmation hearing has no basis. The Order approving the disclosure statement and plan provided that objection to confirmation had to be filed by December 6, 1982, at 5:00 P.M. The Pension Fund filed its objection to confirmation on December 2nd, well within the time limit. It would be absurd and unfair for this Court to penalize a creditor because that creditor participated in the process of approving the disclosure statement. The Code does not provide that the creditor must reveal any objection it may have prior to the hearing on confirmation.

Based upon the above rulings of law, the Pension Fund's unsecured claim for withdrawal liability will be allowed as submitted. Additionally, the Fund is entitled to receive the same distribution on its claim as the other general unsecured creditors.