**In re PULASKI HIGHWAY EXPRESS, INC., Debtor.**

**PULASKI HIGHWAY EXPRESS, INC., Plaintiff,**

**v.**

**CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE AND PENSION FUNDS, Defendant.**

Bankruptcy No. 382–00465.
Adv. No. 382–0854.

United States Bankruptcy Court,
M.D. Tennessee.

July 23, 1984.

Ruth Kinnard, M. Edward Owens, Jr., Chambers, Wyckoff & Beckner, Nashville, Tenn., for debtor.

C. Dewey Branstetter, Jr., R. Jan Jennings, Branstetter, Kilgore & Stranch, Nashville, Tenn., for defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The debtor-in-possession claims that the debtor's eve-of-bankruptcy payments on a judgment for arrearages to its employees' pension plan are recoverable preferences under 11 U.S.C.A. § 547 (West 1979). The issues are: (1) whether the post-confirmation debtor is the proper party to prosecute this action; (2) whether the referral of this proceeding from the district court to the bankruptcy court under the "Interim Emergency Local Rule" was proper and constitutional; (3) whether a pre-bankruptcy agreed order between the debtor and defendant in the United States District Court is an injunction entitled to special treatment in this proceeding; and (4) whether the Employee Retirement Income Security Act ("ERISA") prohibits a debtor-in-possession from recovering payments to a pension plan as preferences under § 547 of the Bankruptcy Code. After consideration of the briefs and arguments of the parties, the court holds that the debtor is the proper party to prosecute this cause, that the reference is proper, that the defendant has an unsecured claim based on the district court order and that payments made to an ERISA-qualified pension plan are not immune from recovery as preferential transfers.

The following constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

On February 17, 1982, Pulaski Highway Express, Inc. ("debtor") filed a voluntary Chapter 11 petition. The debtor was and remains a participant in a multi-employer pension fund administered by the defendant Central States Southeast and Southwest Areas Health and Welfare and Pension Funds ("Central States"). Prior to bankruptcy, Central States sued the debtor in the United States District Court for the Middle District of Tennessee to recover unpaid contributions. The debtor and Central States entered an agreed order settling liability for the arrearage on March 18, 1981. Within 90 days before February 17, 1982, the debtor paid approximately $32,500 to Central States in partial satisfaction of the judgment.

A Chapter 11 plan for liquidation of the debtor was confirmed on June 23, 1982. On December 16, 1982, the debtor-in-possession commenced this adversary proceeding to recover the pre-bankruptcy payments from Central States. The four issues addressed herein were identified at a

pretrial conference and have been submitted on pretrial motions. Trial of the substantive issues is set for August 2, 1984.

## I. PROPER PARTY

■ Central States asserts that the confirmed Plan of Liquidation preserves this cause of action as an asset of the estate which can only be liquidated by the appointed agent. Central States misreads the confirmed plan. The Amended and Modified Disclosure Statement and Plan of Liquidation provide that the debtor retained the right to prosecute any causes of action under state law or the Bankruptcy Code. The contract between the debtor and the liquidating agent provides that "all choses in action and any other actions which Pulaski may have by virtue of provisions of the Bankruptcy Code" are excluded from the assets to be liquidated. The Bankruptcy Code authorizes a debtor-in-possession to prosecute preference actions where no trustee has been appointed.[1] On these facts the post-confirmation debtor is a proper party to prosecute this cause.[2]

## II. REFERRAL FROM DISTRICT COURT

■ Central States asserts that the referral of this proceeding from the district court to the bankruptcy court is improper because no exceptional circumstances exist warranting referral.[3] Although this court is sympathetic to Central States' position, see In re Conley, 26 B.R. 885 (Bankr.M.D.

Tenn.1983), the propriety and constitutionality of the referral system utilized in this district was approved by the United States Court of Appeals for the Sixth Circuit in *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 263 (6th Cir.1983). This court is bound by the Sixth Circuit decision. *Timmreck v. United States,* 577 F.2d 372, 374 n. 6 (6th Cir.1978).

## III. DISTRICT COURT JUDGMENT

Central States argues that the allegedly preferential payments by the debtor were required by a mandatory "injunction" of the United States District Court for the Middle District of Tennessee and that the bankruptcy court cannot "override" an "injunction" of the district court by ordering the return of the payments.

■ Central States misperceives the order of the district court. Not every "order" is a mandatory injunction. *See, e.g., United Bonding Insurance Co. v. Stein,* 410 F.2d 483, 486 (3d Cir.1969) (judgment in favor of plaintiff ordering the deposit of $75,000 was not an injunction). *See also Taylor v. Board of Education,* 288 F.2d 600, 604 (2d Cir.1961). The purported "injunction" is merely an agreed order authorizing the entry of a judgment in favor of Central States against the debtor. The "Agreed Order" provides:

It is hereby agreed by and between Pulaski Highway Express, Inc. and ... [Central States] ... that the defendant Pula-

---

**1.** 11 U.S.C.A. § 1107(a) (West 1979) provides in relevant part:

Subject to any limitations on a trustee under this chapters, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

**2.** The issue was not raised at confirmation and is not now framed by Central States whether the benefits of any preference recoveries are properly allocated by the plan in this case.

**3.** The referral system to which Central States objects is no longer operational in this district. When this issue was originally raised, the Bankruptcy Court for the Middle District of Tennessee was operating under Administrative Order 28–3 which required that matters be referred to the bankruptcy judges of this district as "standing masters" pursuant to Rule 53 of the Federal Rules of Civil Procedure. *See Walter E. Heller and Co. Southeast, Inc. v. Matlock Trailer Corp.,* 27 B.R. 318, 323 (M.D.Tenn.1983). On August 2, 1983, the District Court for the Middle District of Tennessee vacated Administrative Order 28–3 and reinstituted Administrative Order No. 28 authorizing the bankruptcy judges for this district to entertain bankruptcy matters and proceedings and enter final judgments and orders.

ski Highway Express, Inc.... waives answer and all defenses to said complaint and agrees to the entry of a final judgment in the following amounts, $76,-692.78 due the Health and Welfare Fund, $96,588.65 due the Pension Fund ... any additional delinquencies accruing interest on the unpaid contribution at the rate of 9% ... reasonable attorney fees and costs of the action, for which execution may issue.

The district court order evidences a debt and entitles Central States to a claim in this bankruptcy case. *See Central States Southeast and Southwest Areas Health and Welfare and Pension Funds v. Columbia Motor Express, Inc.,* 33 B.R. 389, 393 (M.D.Tenn.1983) (pension and health plan claims against a Chapter 11 debtor-in-possession, whether based on judgments or otherwise, are to be administered as part of the bankruptcy case). No authority is cited for the proposition that the pre-bankruptcy money judgment of a United States district court should be treated differently than the money judgments of other courts in a subsequent bankruptcy case.[4]

## IV. ERISA

Central States argues that ERISA prohibits a bankruptcy court from ordering the return of contributions under 11 U.S. C.A. § 547 (West 1979). Two sections of ERISA are claimed to interact to cause this outcome. 29 U.S.C. § 1103(c)(1) provides in relevant part:

[T]he assets of a plan *shall never inure to the benefit of any employer* and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan. (emphasis added).

Central States contends that a preference recovery would violate the "never inure to the benefit of any employer" language of § 1103(c)(1). 29 U.S.C. § 1103(c)(2)(A)(ii) contains a statutory exception to the prohibition contained in § 1103(c)(1):

In the case of a contribution...

\*　　\*　　\*　　\*　　\*　　\*

made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution or payment to the employer within six months after the plan administrator determines that the contribution was made by such a mistake.

Central States reads § 1103(c)(2)(A)(ii) as the exclusive avenue for return of contributions and since this preference action does not meet the special conditions of § 1103(c)(2)(A)(ii), recovery is prohibited by § 1103(c)(1).

■ This court rejects Central States expansive interpretation of § 1103 as an implicit exception to the § 547 avoidance power.[5] On its face, § 1103 is a statutory restriction on the discretion of pension plan trustees to disburse funds and is administratively justifiable as a deterrent to negligent accounting by employers. Section 1103 does not, however, usurp the authority of courts to order the return of contributions made illegally or in violation of other federal laws.

---

4. Claims for pension fund contributions have consistently been held to be within the jurisdiction of the bankruptcy court. *See, e.g., Cott v. New England Teamsters and Trucking Industry Pension Fund,* 26 B.R. 332 (Bankr.D.Conn.1982); *Braniff International Corp. v. Interfirst Bank (In re Braniff Airways, Inc.),* 24 B.R. 466 (Bankr.N. D.Tex.1982).

5. There is some question whether Central States would be protected from a preference action even if § 1103 were interpreted as it claims. On the facts of this case, it is not clear that a recovery would necessarily "inure to the benefit" of the "employer." The filing of a Chapter

11 transforms the "employer" into a new legal entity—a "debtor-in-possession." 11 U.S.C.A. § 1107 (West 1979). The debtor-in-possession operates for the benefit of its creditors, including its present and former employees. In a liquidating Chapter 11 case where the debtor/employer ceases to exist or operate, it is not obvious that a preference recovery inures to the "employer's" benefit. *But see FDIC v. Marine National Exchange Bank,* 500 F.Supp. 108, 113 (E.D.Wis.1980) (employer's successor may not exercise right of setoff against pension plan because such exercise would allow funds to inure to employer's benefit).

The "shall never inure to the benefit" language isolated by Central States has been applied primarily to restrict the *payment of benefits* solely to employees, not to bar the return of unwarranted contributions. *See, e.g., Peckham v. Board of Trustees of the International Brotherhood of Painters and Allied Trades Union,* 653 F.2d 424, 427 (10th Cir.1981) ("our reading of ERISA convinces us that dual status individuals are not eligible for inclusion in multi-employee benefit plans", citing the "shall never inure to the benefit" language relied on by Central States). As a matter of statutory interpretation, in non-bankruptcy contexts, several courts have rejected the view of § 1103 offered by Central States because that reading would leave plan contributors completely without legal recourse where a plan administrator fails or refuses to make the determinations described in § 1103(c)(2)(A)(ii). *See Ethridge v. Masonry Contractors, Inc.,* 536 F.Supp. 365, 368 (N.D.Ga.1982) (employer is entitled to return of overpayments to pension plan if within six months of discovery of the overpayment, it demands return of the overpayment, *even if there has been no determination by plan administrator that contribution was made by mistake of law or fact*). Other courts have recognized that, under appropriate circumstances, recovery of contributions is allowable without a specific finding of grounds under § 1103. *See, e.g., Teamsters Local 639—Employers Health Trust v. Cassidy Trucking, Inc.,* 646 F.2d 865, 868 (4th Cir. 1981); *E.M. Trucks, Inc. v. Central States, Southeast and Southwest Areas Pension Plan,* 517 F.Supp. 1122, 1124 (D.Minn. 1981).

▮▮ Other provisions of ERISA demonstrate that § 1103 was not intended to supercede other laws which might allow recovery of payments to a qualified plan. 29 U.S.C. § 1144(d) expressly provides that:

Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States. . . .

Central States takes the position, and bears the burden to prove,[6] that § 1103 is an exception to the unambiguous language of § 1144(d). Central States' interpretation is axiomatically inconsistent with fundamental principles of statutory interpretation.[7] The language of § 1144(d) could be no clearer: *nothing* in ERISA should be interpreted to impact other federal law. There is nothing in the legislative history to § 1103 or to § 1144(d) to suggest that the bankruptcy laws were not protected by § 1144(d) or were to be limited by § 1103(c). If § 1103 is interpreted to supercede, modify or otherwise limit § 547 of the Bankruptcy Code, such a result would violate the proscription of § 1144(d). ERISA is internally consistent only if § 1103 is given a less pervasive interpretation than that argued by Central States. This court, therefore, will not interpret § 1103 in a manner that is inconsistent with the unambiguous language of § .1144(d).

Consistent with this view, courts addressing conflicts between ERISA and the Bankruptcy Code have concluded that the Bankruptcy Code controls because of the

---

**6.** The party claiming the benefit of a statutory exception bears the burden of persuasion. *United States v. First City National Bank,* 386 U.S. 361, 366, 87 S.Ct. 1088, 1092, 18 L.Ed.2d 151 (1967).

**7.** In determining the scope of a statute, a court must first examine the statutory language. *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); *North Dakota v. United States,* 460 U.S. 300, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979). Courts, however, should not look to a single sentence within a statute, but should examine the entire statute to reach a harmonious and comprehensive construction. *Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973); Reliance on the literal language of a particular statutory section is improper if it leads to a result inconsistent with other portions of the statute, is contradicted by legislative history, or leads to an absurd result. *S.E.C. v. Ambassador Church Finance/Development Group, Inc.,* .679 F.2d 608 (6th Cir.1982).

explicit language of § 1144(d). *See, e.g., Goff v. Taylor,* 706 F.2d 574, 587 (5th Cir. 1983) (ERISA was not intended to affect the operation of other federal laws; ERISA's specific provision precluding interference with the operation of federal law renders the Bankruptcy Code effective over any ERISA provisions to the contrary); *Central States Southeast and Southwest Areas Health and Welfare and Pension Funds v. Columbia Motor Express, Inc.,* 33 B.R. at 394; *Samore v. Graham,* 24 B.R. 305, 309 (Bankr.N.D.Iowa 1982); *Clotfelter v. CIBA–GIEGY Corp. (In re Threewitt),* 20 B.R. 434, 437 (Bankr.D.Kansas 1982); *Eisenberg v. Baviello,* 12 B.R. 412, 417 (Bankr.E.D.N.Y.1981).

Central States argument that § 1144(d) was enacted in 1974 without contemplation of § 547 (enacted in 1978) is not persuasive of its position. When § 1144(d) was enacted, a preference statute similar to § 547 existed as § 60 of the former Bankruptcy Act.[8] Section 547 of the Bankruptcy Reform Act of 1978 continued the policy of former § 60 of insuring the collection and equal distribution of assets among creditors. H.R.REP. NO. 595, 95th Cong., 1st Sess. 177–178 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. *See also In re Davis,* 22 B.R. 644 (Bankr.M.D.Ga.1982). Congress is presumed to know the law, *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) and is presumed to be aware of the interrelationships among statutes. Congress, however, included no preference exception for ERISA contributions either within ERISA or within the Bankruptcy Reform Act

of 1978.[9] Congress is also presumed aware of judicial interpretations of statutes. *See, e.g., Florida National Guard v. Federal Labor Relations Authority,* 699 F.2d 1082 (11th Cir.1983); *United States v. Professional Air Traffic Controllers Organization,* 653 F.2d 1134 (7th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981). Congress has not amended § 1144(d) in the ten years since its enactment, despite the substantial revision of other subsections of § 1144 in 1983 and the consistent judicial interpretation that § 1144(d) prohibits ERISA from interfering with the operation of the Bankruptcy Code.

Central States' argument that the policy underlying ERISA evinces an intent to override § 547 must be rejected. Policy considerations, no matter how laudable, cannot be utilized to defeat the explicit provisions of statutes. The Congressional motivation for enacting ERISA is detailed in 29 U.S.C. § 1001(a) and includes a recognition "that the continued well-being and security of millions of employees and their dependents are directly affected by these plans." ERISA was enacted so that *"minimum standards* be provided assuring the equitable character of such plans and their financial soundness." (emphasis added). This general section setting forth legislative goals does not constitute an operative section of the statute and does not prevail over specific statutory provisions. *Bissette v. Colonial Mortgage Corp.,* 477 F.2d 1245, 1246 n. 2 (D.C.Cir.1973). Counsel for Central States would have this court focus only on the legislative intent and lofty goals of

---

**8.** Section 60(a)(1) of the former Bankruptcy Act provided:

A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

**9.** Section 547 itself expressly details several important exceptions to preference recovery. Con-

gress could have easily shielded ERISA contributions from recovery as preferences had it so intended. A presumption exists that the designation of explicit enumerated exceptions precludes the inference of other exceptions. *See, e.g., National Railroad Passenger Corp. v. National Ass'n. of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). The enumerated exceptions to the recovery of preferences outlined in § 547(c) are exclusive and a bankruptcy court is without authority to judicially create additional exceptions. *See McColley v. M. Fabrikant & Sons, Inc. (In re Candor Diamond Corp.),* 26 B.R. 850, 851 (Bankr.S.D.N.Y.1983).

the statute with the result that ERISA be elevated to the pinnacle of the federal statutory hierarchy.[10] This court declines to accord ERISA more than Congress directed in § 1144(d).

Congressional balancing of the interests of pension plans and the rights of debtors and creditors in bankruptcy is further evidenced by the treatment of ERISA claims in the Bankruptcy Code. Although withdrawal liability was established as a significant safeguard against the collapse of pension plans, *see In re Kessler*, 23 B.R. 722, 725 (Bankr.S.D.N.Y.1982), Congress did not include withdrawal liability as a special class of claims entitled to priority under the Bankruptcy Code and withdrawal liability is treated as an ordinary unsecured claim. *In re Granada Wines, Inc.*, 26 B.R. 131, 134 (Bankr.D.Mass.1983). 11 U.S.C.A. § 507(a)(4) (West 1979) provides a fourth level of priority for unsecured claims for contributions to employee benefit plans arising within 180 days prior to the petition and limits the amount of priority to $2,000 per employee.[11]

Section 1103 of ERISA did not implicitly repeal or invalidate § 547 of the Bankruptcy Code as suggested by Central States. The Supreme Court has repeatedly held that implied repeals are disfavored. *See, e.g., T.V.A. v. Hill*, 437 U.S. 153, 189, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978);

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168, 96 S.Ct. 1319, 1322, 47 L.Ed.2d 653 (1976). Repeals by implication are appropriate only when provisions of two acts are in irreconcilable conflict or when the later act covers the whole subject of the former and is clearly intended as a substitute. *Id.* As noted *supra*, ERISA and the Bankruptcy Code are easily reconciled by a less expansive interpretation of § 1103 or by resort to § 1144(d). There is no patent inconsistency between the laws unless the tortured interpretation proposed by Central States is adopted. Furthermore, Central States labors under the mistaken view that the "shall never inure to the benefit" language in § 1103 was enacted with the 1980 amendments to ERISA, subsequent to the enactment of the Bankruptcy Code. Although the 1980 amendments made substantial modifications in ERISA,[12] including the addition of withdrawal liability as a component of pension fund protection, the "shall never inure to the benefit" language was part of the original ERISA legislation and took effect January 1, 1975. Thus, the key provisions of § 1103 predate the enactment of the 1978 Bankruptcy Code and cannot be said to have implicitly repealed or modified the later statute.

---

**10.** Central States' argument that pension contributions are immune from recovery leads to the absurd result that a debtor could fund its pension liability by liquidating all its assets on the eve of bankruptcy and paying the proceeds over to the pension fund trustees. If Central States' argument is accepted, such payments would be exempt from recovery by a trustee, the debtor, or other creditors, regardless of fraud or other wrongdoing. This result is manifestly contrary to the philosophy of the Bankruptcy Code and is an unreasonable construction of legislative intent in enacting § 1103.

**11.** The goals of the Bankruptcy Code and of ERISA are not irreconcilably adversarial, and in many circumstances are consistent. Central States' argument that pension funds should have absolute immunity from recovery ignores the economic realities of Chapter 11 cases. Although the instant case resulted in a liquidation of the debtor's assets, Chapter 11 is often the

only meaningful alternative for all parties concerned. Establishing a rule that pension contributions are immune from recovery could seriously jeopardize reorganization efforts to the detriment of general creditors, the employees, as well as the pension plans. The recovery and pooling of preferential transfers is often vital to the debtor's financial recovery. The debtor's reorganization may be in the employees' best interest as the only means available to protect their jobs. The debtor's reorganization may also be in the pension fund's best interest because the pension fund is an unsecured creditor and unable to recoup unpaid contributions without the continued operation of the debtor.

**12.** The 1980 amendments to § 1103 merely shortened the period in which employers could demand the return of mistaken contributions from one year to six months. No additional substantive changes occurred to this section through the amendments.

**312**

Central States' argument that the doctrine of *ejusdem generis* mandates that § 1103 supercede § 547 also fails upon analysis. Central States cites *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 228, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957) for the proposition that "specific terms prevail over the general in the same or another statute which might otherwise be controlling" and asserts that § 547 is a general provision modified by the specific mandate of § 1103. The rule of *ejusdem generis* is merely an aid to construction and applies only *when there is uncertainty* as to the meaning of a particular clause in a statute. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). *Ejusdem generis* is not a rule of law and should not be employed when the intent of the legislature is otherwise apparent. *United States v. Frumento,* 563 F.2d 1083 (3rd Cir.1977). Here legislative intent is clear. Section 1144(d) precludes operation of the doctrine by restricting the impact of ERISA provisions on other federal statutes.

Accordingly, the court finds that the debtor is the proper party to prosecute this action, that the referral of this proceeding is appropriate, that the district court's agreed judgment is not entitled to special treatment other than as the basis for a claim, and that the trustees of the pension fund may be ordered to return contributions if the elements of a preferential transfer are proven at trial.

An appropriate order will be entered.