## UNITED STATES *v.* FIRST CITY NATIONAL BANK OF HOUSTON ET AL.

No. 914.   Argued February 20–21, 1967.—Decided March 27, 1967.*

---

*Together with No. 972, *United States* v. *Provident National Bank et al.,* on appeal from the United States District Court for the Eastern District of Pennsylvania, argued February 21, 1967.

*Assistant Attorney General Turner* argued the cause for the United States in both cases. With him on the brief were *Solicitor General Marshall* and *Richard A. Posner.*

*David T. Searls* argued the cause for appellees First City National Bank of Houston et al. in No. 914. With him on the brief were *Harry M. Reasoner, Leon M. Payne* and *William R. Lummis. Frederic L. Ballard* argued the cause for appellees Provident National Bank et al. in No. 972. With him on the brief were *Charles I. Thompson, Jr., Tyson W. Coughlin* and *Richard C. Bull. Eugene J. Metzger* in No. 914 and *Joseph J. O'Malley* in No. 972 argued the cause for appellee Comptroller of the Currency. With them on the brief were *Robert Bloom, Charles H. McEnerney, Jr.,* and *Philip L. Roache, Jr.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

These civil suits were filed by the United States under § 7 of the Clayton Act, 38 Stat. 731, as amended, 64 Stat. 1125, 15 U. S. C. § 18, to prevent two bank mergers—one in Texas between the First City National Bank of Houston and the Southern National Bank of Houston, and one in Pennsylvania between the Provident National Bank and the Central Penn National Bank, both in Philadelphia.

The Comptroller of the Currency approved the mergers under the Bank Merger Act of 1966, 80 Stat. 7, 12 U. S. C.

§ 1828 (c) (1964 ed., Supp. II). The United States thereupon brought these suits in the respective District Courts and the Comptroller intervened in them. The District Courts dismissed the complaints. No. 914 (unreported); No. 972, 262 F. Supp. 397. The United States appealed, 32 Stat. 823, as amended, 15 U. S. C. § 29, and we noted probable jurisdiction, 385 U. S. 1023, 1024.

## I.

It is suggested that the complaints are defective in that they fail to state that the actions are brought under the Bank Merger Act of 1966, do not even mention the Act, and that, therefore, these cases should be remanded to allow the Government to amend the complaints.

The Bank Merger Act of 1966 provides that "[a]ny action brought under the *antitrust laws*" shall be brought within a specified time (12 U. S. C. § 1828 (c)(7)(A)); it also specifies the standards to be applied by a court in a judicial proceeding challenging a bank merger "on the ground that the merger . . . constituted a violation of any *antitrust laws* other than section 2 of [the Sherman Act]" (12 U. S. C. § 1828 (c)(7)(B)); and it provides immunity from such an attack if those standards are met. Section 1828 (c)(8) provides that, "[f]or the purposes of [§ 1828 (c)], the term 'antitrust laws' means . . . [the Sherman Act, the Clayton Act], and any other Acts in pari materia." (Emphasis added.) Thus, an action challenging a bank merger on the ground of its anticompetitive effects is brought under the antitrust laws. Once an action is brought under the antitrust laws, the Bank Merger Act provides a new defense or justification to the merger's proponents—"that the anticompetitive effects of the proposed transaction are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to

be served." 12 U. S. C. § 1828 (c)(5)(B). There is no indication that an action challenging a merger on the ground of its anticompetitive effects is bottomed on the Bank Merger Act rather than on the antitrust laws. What is apparent is that Congress intended that a defense or justification be available once it had been determined that a transaction would have anticompetitive effects, as judged by the standards normally applied in antitrust actions. Thus, the Government's failure to base the actions on the Bank Merger Act of 1966 does not constitute a defect in its pleadings. Nor is the Government's failure to mention the Bank Merger Act fatal, for, as we shall see, the offsetting community "convenience and needs," as specified in 12 U. S. C. § 1828 (c)(5)(B), must be pleaded and proved by the defenders of the merger.

## II.

An application for approval of the Texas merger was made to the Comptroller of the Currency pursuant to 12 U. S. C. § 1828 (c)(5)(B), which provides that he shall not approve the merger "whose effect in any section of the country may be substantially to lessen competition, or to tend to create a monopoly, or which in any other manner would be in restraint of trade, unless [he] finds that the anticompetitive effects of the proposed transaction are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served." Requests were made of the Attorney General and the Federal Reserve Board pursuant to 12 U. S. C. § 1828 (c)(4) for their views and both submitted reports to the Comptroller that the merger would have serious anticompetitive effects. The Comptroller nonetheless approved it.

The same procedure was followed in the Pennsylvania case, and the Attorney General and Federal Reserve sub-

mitted adverse reports. Nonetheless the Comptroller approved this merger also. And, as we have said, these civil suits were instituted to enjoin the mergers under § 7 of the Clayton Act.

Section 7 of the Clayton Act condemns mergers where "the effect of such acquisition may be substantially to lessen competition." The Bank Merger Act of 1966 did not change that standard or the machinery for obtaining the prior approval of the Comptroller and a preliminary expression of views by the Attorney General and the Federal Reserve, but it added an additional standard for the Comptroller. Section 1828 (c)(5)(B) says, as already noted, that no merger shall be approved where the effect "may be substantially to lessen competition" unless the responsible agency, in this case the Comptroller, "finds that the anticompetitive effects of the proposed transaction are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served." And that subsection goes on to say: "In every case, the responsible agency shall take into consideration the financial and managerial resources and future prospects of the existing and proposed institutions, and the convenience and needs of the community to be served."

Section 1828 (c)(7)(B) provides that in a judicial proceeding attacking a merger on the ground that it violates the antitrust laws "the standards applied by the court shall be identical with" those the banking agencies must apply. And 12 U. S. C. § 1828 (c)(7)(A) states that "In any such action, the court shall review *de novo* the issues presented." (Emphasis added.)

Section 1828 (c)(7)(A) also provides that the commencement of an antitrust action in the courts "shall stay the effectiveness of the agency's approval unless the court shall otherwise specifically order."

It is around these new provisions of the 1966 Act and their interplay with §.7 of the Clayton Act that the present controversy turns.

First is the question whether the burden of proof is on the defendant banks to establish that an anticompetitive merger is within the exception of 12 U. S. C. § 1828 (c)(5)(B) or whether it is on the Government. We think it plain that the banks carry the burden. That is the general rule where one claims the benefits of an exception to the prohibition of a statute. *Federal Trade Commission* v. *Morton Salt Co.*, 334 U. S. 37, 44–45. The House Report (No. 1221, 89th Cong., 2d Sess.) makes clear that antitrust standards were the norm and anticompetitive bank mergers, the exception: ". . . the bill acknowledges that the general principle of the antitrust laws—that substantially anticompetitive mergers are prohibited—applies to banks, but permits an *exception* in cases where it is clearly shown that a given merger is so beneficial to the convenience and needs of the community to be served . . . that it would be in the public interest to permit it" (Emphasis added.) *Id.,* at 3–4.

The sponsor of the bill that was finally enacted, Congressman Patman, flatly stated: "It should be clearly noted that the burden of establishing such 'convenience and needs' is on the banks seeking to merge; and when we say clearly outweighed we mean outweighed by the preponderance of the evidence." 112 Cong. Rec. 2333–2334 (Feb. 8, 1966).

We therefore disagree with the views of the lower courts to the contrary.

This problem is, of course, subtly merged with the question whether judicial review of the Comptroller's decision is in the category of other administrative rulings which are sustained unless a court is persuaded that the

agency's action is clearly unsupported or not supported by substantial evidence.

The 1966 Act was the product of powerful contending forces, each of which in the aftermath claimed more of a victory than it deserved, leaving the controversy that finally abated in Congress to be finally resolved in the courts. So far as review of administrative agency action is concerned, we have only this to say. Prior to the 1966 Act administrative approval of bank mergers was necessary. Yet in an antitrust action later brought to enjoin them we never stopped to consider what weight, if any, the agency's determination should have in the antitrust case. See *United States* v. *Philadelphia National Bank,* 374 U. S. 321; *United States* v. *First Nat. Bank,* 376 U. S. 665. Traditionally in antitrust actions involving regulated industries, the courts have never given presumptive weight to a prior agency decision, for the simple reason that Congress put such suits on a different axis than was familiar in administrative procedure. *United States* v. *Radio Corporation of America,* 358 U. S. 334; *United States* v. *El Paso Natural Gas Co.,* 376 U. S. 651; *United States* v. *Philadelphia National Bank, supra; United States* v. *First Nat. Bank, supra.* We have found no indication that Congress designed judicial review differently under the 1966 Act than had earlier obtained.

In fact, as already noted, "the standards applied by the court shall be identical with those that the banking agencies are directed to apply." 12 U. S. C. § 1828 (c) (7)(B). This language does not express the conventional standard, *i. e.,* whether the agency's action is supported by substantial evidence. In the latter instance it is the agency's function to determine whether the law has been violated, while it is the court's function to ascertain whether, absent error in statutory construction, the agency's action has substantial support in the evidence.

There is no indication that Congress took that course here. Indeed the 1966 Act provides that the court in an antitrust action "shall review *de novo* the issues presented." (Emphasis added.) 12 U. S. C. § 1828 (c)(7)(A). It is argued that the use of the word "review" rather than "trial" indicates a more limited scope to judicial action. The words "review" and "trial" might conceivably be used interchangeably. The critical words seem to us to be "*de novo*" and "issues presented." They mean to us that the court should make an independent determination of the issues. Congressman Patman, the Chairman of the House Committee that drafted the Act, in speaking of this *de novo* review, said that the court would "completely and on its own make a determination as to whether the challenged bank merger should be approved under the standard set forth in paragraph 5 (B) of the bill." He added that the "court is not to give any special weight to the determination of the bank supervisory agency on this issue." 112 Cong. Rec. 2335 (Feb. 8, 1966). Indeed the momentum of judicial precedents is in that direction. For immunity from antitrust laws "is not lightly implied." *California* v. *Federal Power Commission*, 369 U. S. 482, 485. And the grant of administrative power to give immunity unless the agency's decision is arbitrary, capricious, or unsupported by substantial evidence, would be a long step in that direction. Moreover, the Comptroller's action is informal, no hearings in the customary sense having been held prior to the 1966 Act (*United States* v. *Philadelphia National Bank, supra,* at 351) and none being required by Congress in the 1966 Act. We would therefore have to assume that Congress made a revolutionary innovation by making administrative action well nigh conclusive, even though no hearing had been held and no record in the customary sense created.

The courts may find the Comptroller's reasons persuasive or well nigh conclusive. But it is the court's judgment, not the Comptroller's, that finally determines whether the merger is legal. That was the practice prior to the 1966 Act; and we cannot find a purpose on the part of Congress to change the rule. This conclusion does not raise serious constitutional questions by making the courts perform nonjudicial tasks. The "rule of reason," long prevalent in the antitrust field (see, *e. g.*, *Chicago Board of Trade* v. *United States,* 246 U. S. 231), has been administered by the courts. A determination of the effect on competition within the meaning of § 7 of the Clayton Act is a familiar judicial task. The area of "the convenience and needs of the community to be served," now in focus as part of the defense under the 1966 Act, is related, though perhaps remotely, to the failing-company doctrine, long known to the courts in antitrust merger cases. *United States* v. *Diebold, Inc.,* 369 U. S. 654. The appraisal of competitive factors is grist for the antitrust mill. See, *e. g., United States* v. *Philadelphia National Bank, supra,* 357–367. The courts are not left at large as planning agencies. The effect on competition is the standard; and it is a familiar one.[1]  If the anticompeti-

---

[1] 12 U. S. C. § 1828 (c)(5)(B) provides, as we have seen, that a merger shall not be approved "whose effect in any section of the country may be substantially to lessen competition." It is pointed out that that standard omits the phrase "in any line of commerce" which is present in § 7 of the Clayton Act. It is argued that Congress meant that commercial banking is no longer to be considered as an area of effective competition and that the Act establishes in banking "a market test measurable only by larger commercial realities."

We do not reach this question and we intimate no opinion on it nor any views on the merits of these mergers or on the justifications that are urged in their support. All questions except the procedural ones treated in the opinion are reserved.

tive effect is adverse, then it is to be excused only if "the convenience and needs of the community to be served" *clearly* outweigh it. We see no problems in bringing these standards into the area of judicial competence. There are no constitutional problems here not present in the "rule of reason" cases.

There is left only the stay issue. As we have seen, the 1966 Act provides that a timely antitrust action "shall stay the effectiveness of the agency's approval unless the court shall otherwise specifically order." 12 U. S. C. § 1828 (c)(7)(A). The lower courts dissolved the statutory stays on dismissing the antitrust suits.

Our remand will direct that the stays continue until the hearings below are completed and any appeal is had. A stay of course is not mandatory under any and all circumstances. But absent a frivolous complaint by the United States, which we presume will be infrequent, a stay is essential until the judicial remedies have been exhausted. The caption of the 1966 Act states that it is designed "[t]o establish a procedure for the review of proposed bank mergers so as to eliminate the necessity for the dissolution of merged banks." Moreover, bank mergers may not, absent emergency conditions, be consummated until 30 days after approval by the Comptroller in order to enable the Attorney General to commence an antitrust action, 12 U. S. C. § 1828 (c)(6), which, apart from emergency situations, must be started within 30 days of the agency's approval, 12 U. S. C. § 1828 (c)(7)(A). The legislative history is replete with references to the difficulty of unscrambling two or more banks *after* their merger.[2] The normal procedure there-

---

[2] The Chairman of the Federal Reserve System testified in the hearings that preceded enactment of the Bank Merger Act of 1966 that "a Federal court order cannot recreate the two banks that formerly existed . . . . [N]o matter how one may feel about whether the merger should have taken place in the first instance, there is

fore should be maintenance of the *status quo* until the antitrust litigation has run its course, lest consummation take place and the unscrambling process that Congress abhorred *in the case of banks* be necessary.

*Reversed.*

MR. JUSTICE CLARK took no part in the consideration or decision of these cases.

---

no turning back. To unscramble the resulting bank clearly poses serious problems not only for the bank but for its customers and the community." Hearings on S. 1698 and related bills before the Subcommittee on Domestic Finance of the House Committee on Banking and Currency, 89th Cong., 1st Sess., 11. The president of the American Bankers Association declared that " '[u]nmerging' a bank after the two banks have operated as a single unit is nightmarish even in the abstract." Hearings on S. 1698 before a Subcommittee of the Senate Committee on Banking and Currency, 89th Cong., 1st Sess., 63. Senator Robertson stated, "you are dealing with a physical impossibility," and "the community gets hurt," when divestiture is attempted in a bank merger case. *Id.,* at 4. Senator Proxmire spoke of "the agony and the inequity and the financial loss, disruption of the economy in the community, of being required . . . to unscramble." *Id.,* at 202.