BORMAN'S, INC. *v.* CITY OF DETROIT

1. Taxation—City Income Tax Act—Appeal and Error—Trial De Novo.
   The section of the City Income Tax Act concerning appeals from the Commissioner of Revenue to the circuit court states that "the issues in the action shall be determined *de novo* by the circuit court" and means that the court should make an independent determination of the issues (MCLA § 141.505).

2. Taxation—City Income Tax Act—Apportionment of Income—Accounting—Net Profits.
   Under prior sections of the City Income Tax Act a taxpayer could initially make his election to use separate accounting instead of the "three factor" allocation formula but the method to be used for determining the Detroit city income tax is not his sole and absolute choice as, if a separate accounting method is used by the taxpayer, the city, under a section of the statute, may require a statement explaining the apportionment in sufficient detail "to determine whether the net profits attributable to the city are apportioned with reasonable accuracy" (MCLA §§ 141.618–141.620).

3. Taxation—City Income Tax Act—Allocation of Profits—Accounting—Separate Accounting.
   The method of separate accounting contended for by a taxpayer under the City Income Tax Act, however businesslike and

Reference for Points in Headnotes
[1–3] 51 Am Jur, Taxation § 124 *et seq.*

desirable it may be to test the operations of each retail store of the taxpayer, fails to make an equitable allocation for tax purposes of its profits from its entire operations; thus, it does not meet the ultimate test of the statute-allocation of the net profits of the company justly and equitably among its various operations (MCLA § 141.625).

Appeal from Wayne, Charles S. Farmer, J., and from Court of Appeals prior to decision. Submitted October 6, 1971. (No. 8 October Term 1971, Docket No. 53,049.) Decided November 9, 1971.

Complaint by Borman's, Inc., against the City of Detroit for the repayment of city income tax and interest and a declaratory judgment that plaintiff's established method of accounting is in accord with a statute and an ordinance. Judgment for defendant. Plaintiff appealed to the Court of Appeals and applied to the Supreme Court for leave to appeal prior to decision by the Court of Appeals. Leave granted. Remanded for further proceedings.

*Friedman, Meyers & Keys* (*Stanley M. Weingarden,* of counsel), for plaintiff.

*Michael M. Glusac,* Corporation Counsel, and *Julius C. Pliskow, Joseph Maisano,* and *Harry P. Friedman,* Assistants Corporation Counsel, for defendant.

ADAMS, J.

## I. The Facts and Proceedings

Plaintiff, Borman's, Inc., is a food store chain with operations in the City of Detroit and surrounding suburbs. It challenges the accounting method defendant City of Detroit used to compute Bor-

man's Detroit city income tax for the taxable year ending June 26, 1965.

During that year plaintiff carried on its central warehouse, management, accounting and advertising operations in Detroit, operated 16 stores in Detroit and operated 40 stores outside of the city.

The director of the Income Tax Division for Detroit disallowed Borman's use of separate accounting and required it to use a "three factor" apportionment formula as provided in MCLA § 141.620 (Stat Ann 1969 Rev § 5.3194[30]).[1]

Separate accounting, as used by Borman's, was challenged by the city as not being true separate accounting within the meaning of the statute. It provided for a separate computation of sales, costs and profits at each sales outlet, but treated the central warehouse, advertising and management functions as costs only, not as profit making activities.

Borman's appealed the Income Tax Division's order. The deputy controller of Detroit and the Detroit Income Tax Board of Review affirmed that order. Borman's then appealed to the Commissioner of Revenue and was given a full hearing at which each party produced two accounting experts. The city's decision was again affirmed.

Borman's two experts admitted that, under its separate accounting method, if Borman's had no stores in the city it would pay no income tax to the city, despite its extensive warehouse, management and advertising operations and plant located in the city. The city introduced evidence, not contested by Borman's, showing that under the "three factor" allocation method (considering the percentage of sales, property and salaries which Borman's had within the City of Detroit, as compared

---

[1] Detroit City Code 21-8-22(4)(b).

to the respective percentages outside the city), Borman's would owe 63% more taxes than under its separate accounting system ($10,877.75 due under separate accounting; $17,763 due under the "three factor" method).

Borman's paid the additional taxes due under the Commissioner's decision and filed this suit. Defendant's answer claimed that review should be conducted as on a writ of superintending control with no new testimony taken. Borman's moved to strike this part of the city's answer, maintaining that they were entitled to a trial *de novo*. Borman's motion was denied.

Plaintiff's case was decided against it on the merits. Borman's appealed to the Court of Appeals and applied to us for leave to appeal prior to the Court of Appeals' decision. We granted leave. (384 Mich 776.)

## II. TRIAL DE NOVO

Does MCLA § 141.505 (Stat Ann 1969 Rev § 5.3194 [5]) require a trial *de novo* by the circuit court or only a determination of the issues *de novo* on the record made before the Commissioner of Revenue?

Section 5 of the City Income Tax Act (MCLA § 141.505; Stat Ann 1969 Rev § 5.3194[5]), concerning appeals from the Commissioner of Revenue to the circuit court, states that "the issues in the action shall be determined de novo by the circuit court".

Judge Charles Kaufman, in denying Borman's claim, reasoned as follows:

"By the use of the words 'de novo' in the statute, it does not necessarily signify to this Court that there shall be a complete retrial with evidence to be submitted and witnesses to testify in Circuit Court. Our Supreme Court has, in numerous cases, held

that chancery actions are heard de novo in the Supreme Court; and yet it is patent that no new evidence or witnesses ever appear before the Supreme Court."

The meaning of the term "de novo" was recently considered by the Supreme Court of the United States in *United States* v. *First City National Bank of Houston* (1967), 386 US 361 (87 S Ct 1088, 18 L Ed 2d 151), involving the interpretation of the Bank Merger Act of 1966 (12 USC § 1828[c]). Section 18(c)(7)(A) of the act (12 USC § 1828[c][7] [A]) provides that in any action brought attacking the administrative agency's determination concerning a bank merger "the court shall review de novo the issues presented." In construing that language, the Court held as follows (p 368):

"It is argued that the use of the word 'review' rather than 'trial' indicates a more limited scope to judicial action. The words 'review' and 'trial' might conceivably be used interchangeably. The critical words seem to us to be *'de novo'* and 'issues presented.' They mean to us that the court should make an independent determination of the issues."

This is a law action. The circuit courts of this state are primarily trial courts. We adopt the reasoning of the Supreme Court of the United States in *United States* v. *First City National Bank of Houston, supra.*

III. "THREE FACTOR" OR SEPARATE ACCOUNTING

Does the city have the right to impose the "three factor" allocation method for determining Detroit city income, or does the language of MCLA §§ 141-.618, 141.619 and 141.620 (Stat Ann 1969 Rev §§ 5 .3194[28], 5.3194[29], and 5.3194[30]),[2] leave the

_____

2 PA 1964, No 284, City Income Tax Act.

choice of separate accounting method to the absolute discretion of the taxpayer?[3]

These sections of the statute read as follows:

"Sec. 18.   When the entire net profit of a business subject to the tax is not derived from business activities exclusively within the city, the portion of the entire net profit, earned as a result of work done, services rendered or other business activity conducted in the city, shall be determined at the election of the taxpayer under either section 19, sections 20 to 24, or section 25.

"Sec. 19.   The separate accounting method shall be used if such taxpayer regularly keeps its books and records in such manner as to show with reasonable accuracy the portion of its net profits attributable to work done, services performed or rendered, and business or other activity conducted within the city, and such portion of the net profits is subject to the tax.   If such method is used the administrator may require a statement, explaining the manner in which the apportionment is made, in sufficient detail to determine whether the net profits attributable to the city are apportioned with reasonable accuracy.

"Sec. 20.   The business allocation percentage method shall be used if such taxpayer does not elect to use the separate accounting method of allocation. The entire net profits of such taxpayer earned as a result of work done, services rendered or other business activity conducted in the city shall be ascertained by determining the total 'in-city' percentages of property, payroll and sales.   'In-city' percentages of property, payrolls and sales, separately computed, shall be determined in accordance with sections 21 to 24."

---

[3] Since this suit was started, these three sections were amended by PA 1969, No 42, to make the determination of accounting method clearly a matter of the city income tax administrator's discretion.

Borman's maintains that the statute and ordinance give absolute discretion to a taxpayer operating in and outside the city to use the separate accounting method.

The language used in sections 18 and 19 granted to a taxpayer the election to use separate accounting instead of the "three factor" allocation formula. Separate accounting is not defined in the statute. There is disagreement among members of the accounting profession as to just what the term means. While the taxpayer could initially make his election, we do not construe the method used to be his sole and absolute choice. If a separate accounting method is used by the taxpayer, the city, under § 19, may require a statement explaining the apportionment in sufficient detail "to determine whether the net profits attributable to the city are apportioned with reasonable accuracy."

MCLA § 141.625 (Stat Ann 1969 Rev § 5.3194[35]) provides that:

"An alternative method of accounting shall be used if the taxpayer or the administrator demonstrates that the net profits of the taxpayer allocable to the city cannot be justly and equitably determined under the separate accounting method or the business allocation percentage method  *  *  *  ."

Under § 25, the net profits of the taxpayer allocable to the city must be justly and equitably determined either under the separate accounting method or the business allocation percentage method, or an alternative method is to be used.

This case is remanded to the circuit court for a determination of what method of accounting should be used justly and equitably to determine the net profits of the taxpayer allocable to the City of Detroit. It is clear that the method elected by the

taxpayer does not meet this test. All of the taxpayer's activities within the City of Detroit, and particularly such vital activities as a central warehouse and advertising and management functions, must have contributed at least something toward making Borman's operations through its retail sales outlets successful.

The method contended for by the taxpayer, however businesslike and desirable it may be to test the operations of each retail store, fails to make an equitable allocation for tax purposes of its profits from its entire operations. It does not meet the ultimate test of the statute—allocation of the net profits of the company justly and equitably among its various operations.

The case is remanded to the Wayne County Circuit Court for further proceedings in accordance with this opinion. No costs, neither party having fully prevailed upon this appeal.

T. M. KAVANAGH, C. J., and BLACK, T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with ADAMS, J.