**NATIONAL STEEL CORPORATION, GREAT LAKES DIVISION, Plaintiff,**

v.

**UNITED STATES COAST GUARD, Defendant.**

No. 96–73739.

United States District Court, E.D. Michigan, Southern Division.

Aug. 21, 1997.

---

Mary Dirkes, Detroit, MI, for Plaintiff.

Paul Wolfteich, Washington, DC, Geneva Halliday, Asst. U.S. Atty., Detroit, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF DENNIS W. GOULD, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE TO THE COAST GUARD

EDMUNDS, District Judge.

Plaintiff National Steel Corp., Great Lakes Division (Great Lakes) seeks declaratory relief from a $10,000 civil penalty assessed by the U.S. Coast Guard on July 11, 1996. The penalty was imposed after the Coast Guard determined that Great Lakes violated Section 311 of the Federal Water Pollution Control Act, 33 U.S.C. § 1321(a)(2) by discharging a sheen of oil into the Detroit River on July 24, 1994.

This matter comes before the Court on the Coast Guard's February 3, 1997 motion for summary judgment. Plaintiff filed a response on February 21, 1997. That response included the affidavit of Dennis W. Gould. The Defendant moved to strike that affidavit on March 4, 1997. Oral argument was heard on April 2, 1997. For the reasons stated below, this Court denies Defendant's motion to strike the Gould affidavit and denies Defendant's motion for summary judgment. The case is remanded to the Coast Guard for further findings.

## I. Facts

Great Lakes operates a steel rolling mill in River Rouge, Michigan, along the banks of the Detroit River. Its manufacturing processes require it to draw millions of gallons of water a day from the Detroit River. This water is then discharged back into the river through Outfall 009. This discharge is regulated by the Clean Water Act and a permit issued by the Michigan Water Resources Commission.

On July 27, 1994, a Coast Guard helicopter witnessed a silver sheen of oil being discharged from Outfall 009 into the Detroit River. The Coast Guard took pictures of the oil spill. The oil spill was approximately 100 yards wide and 2.5 miles long. While investigating the spill on July 27, the investigators noted that the absorbent booms that Great Lakes used to prevent oil from reaching the river were saturated. An environmental engineer for Great Lakes, Carol Mowl, contacted the Coast Guard on July 27, and stated that Great Lakes could not determine the cause of the discharge.

Following an investigation of the oil spill, the Coast Guard issued a notice of violation on September 27, 1994. Great Lakes submitted a written response to the notice of violation and argued that the Coast Guard did not have jurisdiction in the case because the discharge was in compliance with its state NPDES permit. The Hearing Officer, however, found that the oil sheen discharged in this case was not in compliance with the Federal Water Pollution Control Act, 33 U.S.C. § 1321(b)(6)(A), regardless of the existence of any state permit. The Hearing Officer stated:

[Great Lakes] states the discharge in question is in compliance with NPDES Permit No. MI0026778. Federal Statute prohibits the discharge of oil or hazardous substances in a 'harmful quantity'. Harmful quantity has been described as an amount that creates a sheen upon the water. Discharge permits, by their nature, allow for the discharge of hazardous material. However, they do not allow a discharge in the amount of a harmful quantity—namely a sheen. The case file contains significant physical evidence, especially the aerial photos, which clearly demonstrate that a substantial sheen was present. No permit by intent or in fact allows such a discharge.

Opinion of Hearing Officer P.J. Hopkinson at 1. On August 15, 1995, the Coast Guard Hearing Officer found Great Lakes liable for discharging oil in a sheen and assessed a $10,000 penalty.

Great Lakes appealed this decision to the Commandant of the Coast Guard and argued that the discharge was exempt from the statute under 33 U.S.C. § 1321(a)(2)(B) or (C). This statute provides:

"discharge" includes, but is not limited to, any spilling, leaking, pumping, pouring, emitting, emptying or dumping, but excludes (A) discharges in compliance with a

permit under section 1342[1] of this title, (B) discharges resulting from circumstances identified and reviewed and made a part of the public record with respect to a permit issued or modified under section 1342 of this title, and subject to a condition in such permit, and (C) continuous or anticipated intermittent discharges from a point source, identified in a permit or permit application under section 1342 of this title, which are caused by events occurring within the scope of relevant operating or treatment systems.

33 U.S.C. § 1321(a)(2)(A)–(C). The Commandant affirmed the decision of the Hearing Officer on July 12, 1996. He upheld the decision because he found substantial evidence in the record that the oil sheen discharged by Great Lakes constituted a hazardous quantity, which is prohibited by both the Federal Water Pollution Control Act and the state NPDES permit. Commander Opinion at 2. He found insubstantial evidence in the record to support a finding that Great Lakes proved the cause of the spill. The Commander found an affidavit from Mowl stating that the discharge was caused by normal operations unconvincing because it was signed eight months following the incident and provided no explanation for the discharge. The Commander noted that since Great Lakes could not pinpoint the cause, it was not a contemplated discharge made part of the permit. The Commander concluded that the exclusions were not applicable. Commander Opinion at 2.

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment

against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Liberty Lobby*, 477 U.S. at 255.

## III. Analysis

### A. Standard of Review

■ This Court's review of the Coast Guard's decision is limited by the terms of the Clean Water Act. This Court may not set aside or remand the Coast Guard's order "unless there is not substantial evidence in the record, taken as a whole, to support the finding of a violation or unless the Administrator's or Secretary's assessment of the penalty constitutes an abuse of discretion...." 33 U.S.C. § 1321(b)(6)(G). This Court may not set aside the Coast Guard's findings "merely by identifying alternative findings that could be supported by substantial evidence." *Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Instead, this court "should accept the agen-

---

1. 33 U.S.C. § 1342 is also referred to in other statutes and regulations as "Section 402." It regulates the issuance of permits for the discharge of pollutants into navigable waters if regulatory safeguards are satisfied.

cy's factual findings if those findings are supported by substantial evidence on the record as a whole." *Id.* If this Court finds that there was not substantial evidence to support the determination, then the proper course is to remand the case to the agency for additional investigation or explanation. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).

Plaintiff argues that this Court should apply a de novo standard of review because the jurisdiction of the agency is in question. *See King v. Reid,* 59 F.3d 1215, 1217 (Fed. Cir.1995) ("On questions of statutory interpretation and jurisdictional issues, the board's decision is reviewed de novo.") Plaintiff's argument is that its actions did not constitute a "discharge" under the definition set forth in 33 U.S.C. § 1321(a)(2) and therefore, the Coast Guard lacked jurisdiction. This Court disagrees. The Coast Guard has jurisdiction under 33 U.S.C. § 1321(b)(6)(A) to assess a civil penalty against any onshore facility that discharges oil in violation of 33 U.S.C. § 1321(b)(3). The dispute in this case is whether the final administrative decision was based on substantial evidence on the record. The Coast Guard found that Great Lakes had not proven that the oil sheen fit into a statutory exemption. This is not a jurisdictional issue. Instead, it is one testing the sufficiency of the agency's adjudicatory finding. Accordingly, this Court finds that a de novo standard of review is not appropriate.

## B. Motion to Strike the Affidavit of Dennis W. Gould

As an exhibit to its brief in opposition to the Defendant's motion for summary judgment, the Plaintiff included the affidavit of its Acting Area Manager, Dennis W. Gould. Defendant moved to strike this affidavit because it was not part of the administrative record. This Court's review is limited by statute to the administrative record. 33 U.S.C. § 1321(b)(6)(G). Plaintiff argues that it is admissible if this Court conducts a de novo review. For the reasons stated earlier, the Court is not conducting a de novo review. Plaintiff also argues that this affidavit is admissible under Sixth Circuit precedent allowing supplementation of an administrative record in certain circumstances.

"[A] reviewing court may consider materials supplementary to the administrative record in order to determine the adequacy of the government agency's decision, even when the court's scope of review is limited to the administrative record." *United States v. Akzo Coatings,* 949 F.2d 1409, 1427 (6th Cir. 1991). A district court may also consider materials outside of the administrative record in order to explain technical information. "It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Asarco, Inc. v. U.S. EPA,* 616 F.2d 1153, 1160 (9th Cir.1980), *quoted in Akzo,* 949 F.2d at 1427–28; *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) ("[T]he court must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") Consideration of material outside of the administrative record is also permitted "as either background information to aid the court's understanding, or to determine if the agency examined all relevant factors or adequately explained its decision." *Akzo,* 949 F.2d at 1428.

Based on the unique circumstances of this particular case, the Court finds that the affidavit of Dennis W. Gould should not be stricken. Although the affidavit itself constitutes evidence that did not appear in the administrative record, as a practical matter it does not add any new information to the record. Instead, the affidavit is merely Plaintiff's explanation to the Court of the July Oil Program Report which recorded oil usage at Great Lakes in July of 1994. That report was already a part of the administrative record before the Coast Guard. Plaintiff asserts that the Coast Guard disregarded the information in this report when it assessed its penalty. While this Court normally does not consider information from outside of the administrative record, the unusual nature of the affidavit and this case makes it appropriate. The affidavit, containing a technical explanation of material already in the record,

was submitted to argue that the Coast Guard should have considered the information in the report. Therefore, it fits into the Sixth Circuit's limited exception allowing supplementation of the administrative record. *Akzo*, 949 F.2d at 1428. The Defendant's motion to strike the affidavit is therefore denied.

## C.  Motion for Summary Judgment

■ The Coast Guard moves for summary judgment and argues that there is substantial evidence in the administrative record to support its penalty assessment. The burden is on the Coast Guard to show that there exists substantial evidence in the record to support its finding. Great Lakes, however, had the burden of proving to the Coast Guard that one of the statutory exemptions was applicable. *See United States v. First City Nat'l Bank*, 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967) (party claiming benefit of exception to a prohibition of a statute generally bears the burden or proof); *Federal Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196, (1948) ("[T]he general rule of statutory construction [is] that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits.") Therefore, this Court must determine if the Coast Guard has proven that there was substantial evidence to support its finding that Great Lakes did not prove the oil sheen fit into an exception to the definition of a discharge.

One additional factor to consider is the Coast Guard's own interpretations of the statute. The Coast Guard has issued regulations interpreting the exceptions to the definition of discharge, and those regulations are entitled to deference. *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *BP Exploration & Oil, Inc. v. U.S. EPA*, 66 F.3d 784, 791 (6th Cir.1995).

> When a court reviews an agency's construction of a statute, it is confronted with two inquiries. First and foremost is whether Congress has directly spoken to the matter at issue.... If the court decides that Congress has not directly addressed the precise issue at hand, however,

the court may not simply dictate its own construction of the statute. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* (quoting *Chevron, U.S.A.*).

Defendant argues that there was substantial evidence in the administrative record that the Plaintiff's oil sheen did not meet any exceptions to the definition of a discharge. Plaintiff argues that it has proven that the oil sheen was caused by its normal operations under the NPDES permit and that the Coast Guard exceeded its authority because the discharge met the requirements of exemptions (B) and (C).

There are two separate exemptions that the Plaintiff argues are applicable in this matter. The first, a "Type B exemption," was established in 33 U.S.C. § 1321(a)(2)(B), and excludes "discharges resulting from circumstances identified and reviewed and made a part of the public record with respect to a permit issued or modified under section 1342 of this title, and subject to a condition in such permit. . . ." According to the Coast Guard's interpretation in the Marine Safety Manual, the elements of a Type B exemption are the following:

> (b) A discharge is excluded under [33 U.S.C. § 1321(a)(2)(B) if:
>
> (i) The point source from which the discharge occurred, and the oil or hazardous substance which was discharged, are regulated specifically by a condition in a Section 402 permit; and
>
> (ii) The public record accompanying either the issuance or modification of that permit identifies the specific circumstances which resulted in the discharge, and indicates that they were reviewed by the EPA in the formulation of the condition in the permit. [NOTE: To determine whether a discharge is excluded under the second category, complete and accurate documentation of the facts is essential.]

Marine Safety Manual at 5–12 (Record at 217).

The second exemption that Plaintiff claims, a "Type C exemption," was established in 33 U.S.C. § 1321(a)(2)(C), and excludes "continuous or anticipated intermittent discharges from a point source, identified in a permit or permit application under section 1342 of this title, which are caused by events occurring within the scope of relevant operating or treatment systems." According to the Coast Guard's interpretation in the Marine Safety Manual, the elements of a Type C exemption are the following:

(c) A discharge is excluded under [33 U.S.C. § 1321(a)(2)(C) ] if:

(i) The discharge emanated from a point source for which a Section 402 permit has been issued or permit application has been made;

(ii) The discharge was continuous in nature, or if intermittent, anticipated (as evidence in the specific language of the permit or permit application); and

(iii) The events which caused the discharge were within the scope of the physical operating or treatment systems connected to the point source from which it occurred.

Marine Safety Manual at 5–12 to 5–13.

The Coast Guard Hearing Officer, in his two page opinion, found that the oil discharge was not exempt from coverage under the statute. Record at 11–12. He did not, however, directly address the specific requirements of a Type B or C exemption. He also did not consider the evidence from the July 1994 Oil Program Report. He simply determined that the discharge was not in compliance with the NPDES permit because it was a discharge of a harmful quantity of oil. This finding did not directly address Plaintiff's contention. Plaintiff did not contend that the discharge was a Type A exemption.[2] Instead, Plaintiff asserted that the discharge qualified for a Type B or C exemption.

On appeal, the Commandant of the Coast Guard's designee affirmed the Hearing Officer's decision. Record at 5–7. He found that the discharge emanated from a point source identified in the NPDES permit. Nonetheless, he found that Great Lakes had not satisfied the remaining elements of the Type B and C exemptions because it did not identify the cause of the oil spill. He found Mowl's explanation that there was no cause, other than normal operations, unconvincing because her affidavit was signed eight months after the accident. He found that because Great Lakes could not identify the cause of the discharge, it was not an anticipated intermittent discharge. He also did not address the information in the July Oil Program Report.

This Court finds that the Coast Guard has not proven that there was substantial evidence in the administrative record to show that Great Lakes was not entitled to either exemption. To the contrary, it appears that the Coast Guard abused its discretion by disregarding relevant information that Great Lakes submitted indicating that the discharge may have been caused in the course of its operations and met the requirements of a Type B or C exemption. The Hearing Officer never addressed the applicability of the Type B or C exemptions. He also did not consider the Oil Program Report. According to Gould, this report records any unusual or unanticipated oil consumption. The report indicates that there was no unusual or unanticipated oil leak between June 26 and July 30. Since it has eliminated any unusual or unanticipated cause for the discharge on July 27, Great Lakes argues that the sheen must have been the result of normal operations.

The Coast Guard asserts that its was Great Lakes' responsibility to prove the specific cause of the discharge. In order to qualify for a Type B exemption, the permit must identify "the specific circumstances which resulted in the discharge." Marine Safety Manual at 5–12. In order to qualify for the Type C exemption, Great Lakes must prove that the discharge was "anticipated." *Id.* In order to prove the discharge was anticipated, Great Lakes must prove the cause of the discharge.

The Coast Guard did not accept Plaintiff's contention that the discharge was caused by

**2.** 33 U.S.C. § 1321(a)(1) exempts from the definition of discharge "discharges in compliance with a permit under section 1342 of this title."

normal operations. Instead, it rejected that explanation because on the day of the discharge, Mowl could not explain the cause of the sheen. Nothing in the statute or regulations, however, requires an immediate explanation that the company qualified for the exemptions. Moreover, if the discharge was caused by normal operations, and not by any unusual or episodic oil spill, it is reasonable to conclude that Great Lakes would not be able to immediately identify a cause for the discharge. The Coast Guard also based its decision on the fact that there were no witnesses to support Great Lakes' claim that the oil leak originated in the HSM. This position is not supported by the record. Mowl testified that she was present at Great Lakes on July 27 and investigated the cause of the oil sheen. In addition, since Plaintiff's position is that the discharge was caused by ordinary operations and not by any unusual event, the absence of witnesses seems reasonable.

The Coast Guard also bases its decision on evidence that the July 27 monitoring data at two outfalls showed that there was insufficient oil coming from these sources to create a sheen. Great Lakes asserts that the Coast Guard can not realistically base its position on the outfall monitoring data on July 27 because measurements are only taken twice a day and would reflect the composition of the discharge for only ten minutes out of the entire day. In addition, the Coast Guard argues that the absorbent booms used to prevent oil from reaching the river were saturated. Since those booms are replaced on a regular basis, the Coast Guard asserts that normal operations would not cause them to become saturated. The Court finds that this evidence is insufficient to meet the requirements of the substantial evidence test. Plaintiff provided information to the Coast Guard regarding its explanation for the cause of the oil sheen. The Coast Guard did not articulate an adequate basis for rejecting this explanation.

This Court finds that it is proper to remand this matter to the Coast Guard for additional investigation and explanation. The opinions issued by the Coast Guard Hearing Officer and Commander are not supported by substantial evidence because they ignore relevant data and do not directly address the Plaintiff's contention that it sat-isfied the requirements of a Type B or C exemption. Instead, the Coast Guard officers appeared to be analyzing the applicability of a Type A exemption. In reconsidering this matter, the Court asks the Coast Guard to consider the differing requirements of the three exemptions and specify precisely what elements of the Type B and C exemptions were and were not satisfied. In addition, this Court directs the Coast Guard to set forth its rationale for rejecting the evidence in the July Oil Program report, which indicates that there was no oil spill or unplanned episodic oil loss at Great Lakes on July 27.

## IV. Conclusion

For the reasons stated above, this Court hereby **DENIES** Defendant's motion to strike the affidavit of Dennis W. Gould, **DENIES** Defendant's motion for summary judgment, and **REMANDS** this case to the Coast Guard for further investigation or explanation.

**SO ORDERED.**

### ORDER OF REMAND

This matter came before the Court for hearing. For the reasons stated in a memorandum opinion and order denying Defendant's motion to strike the affidavit of Dennis W. Gould, denying Defendant's motion for summary judgment, and remanding case to the Coast Guard;

**IT IS HEREBY ORDERED AND ADJUDGED** that this matter is remanded to the Coast Guard for further investigation and explanation consistent with this Court's opinion.