In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00027-CV


______________________________




PATTERSON DRILLING COMPANY, STEPHEN CLYDE BURTON,


WILL WADE WILEY, STEVEN JOE COKER, AND


TONY LIKER, Appellants



V.



SUZANNE WILLIAMS, INDIVIDUALLY, AND AS


REPRESENTATIVE OF THE ESTATE OF


BOBBY WILLIAMS, DECEASED, FOR AND ON BEHALF OF 


THOSE ENTITLED TO RECOVER FOR HIS DEATH 


UNDER THE TEXAS WRONGFUL DEATH ACT, 


JOHN WILLIAMS, BRYAN WILLIAMS, 


KRISANNE HERBORT, AND ADAM TREY WILLIAMS, Appellees




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. 2000-157




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Patterson Drilling Company, Stephen Clyde Burton, Will Wade Wiley, Steven Joe
Coker, and Tony Liker, appellants, have filed a motion in which they state the case has
been settled and ask this Court to dismiss their appeal without reference to the merits. 
Pursuant to Tex. R. App. P. 42.1, their motion is granted.

 The appeal is dismissed.


 Donald R. Ross

 Justice


Date Submitted: June 14, 2002

Date Decided: June 14, 2002


Do Not Publish



ed judgment in favor of the Breckenridges against the Bank on their
counterclaim under the Deceptive Trade Practices Act (DTPA) for forum abuse, awarding
the Breckenridges $115.20 and $2,500.00 in attorney's fees. The Bank does not challenge
the court's ruling on abuse of forum under the DTPA.

 The Appellants allege three points of error. They first contend the trial court erred
in denying their motion to dissolve a writ of sequestration. Second, the Appellants contend
the trial court erred in granting judgment in favor of the Bank because the Breckenridges
established all of their affirmative defenses: (a) presentment and demand, (b) notice of
default and opportunity to cure, and (c) waiver of timely payment. Finally, the Appellants
contend the trial court erred in finding the Bank did not violate the Truth-in-Lending Act.

 The Bank is the assignee of a retail installment contract signed by the
Breckenridges. The Breckenridges signed the contract as "joint purchasers" in March 1998
for the purchase of a mobile home from Victory Mobile Homes, a dealer located in Spring,
Texas. The Breckenridges promised "to pay the Secured Party or its Assigns" in
accordance with the terms of the contract. According to the testimony, the Breckenridges
purchased the mobile home for the Haases, their daughter and son-in-law, and the Haases
were to make the payments. Although there was no written agreement, Richard testified
the agreement between the Haases and the Breckenridges was that the Breckenridges
were "not going to pay a dime." The installment contract for the mobile home is not
assumable, and neither of the Haases is a party to that contract. There is no evidence in
the record that the Breckenridges ever made any monthly payments as provided in the
contract.

 From the beginning of the contract, the Appellants were continuously behind in their
payments to the Bank. The first payment was due in April 1998. The Bank contacted the
Breckenridges on May 7, 1998, regarding the April payment and was informed the Haases
were to make payments. On May 7, 1998, the Bank contacted Richard, who said he would
mail the payment that day. On May 21, 1998, the Bank again contacted the Breckenridges
regarding the delinquent April payment. John again informed the Bank the Haases lived
in the mobile home and were to make the payments. John gave the Bank the Haases'
telephone number. Despite letters from the Bank regarding notice of default and the right
to cure the default, the Appellants remained behind in payments until bringing the account
current on September 23, 1998. 

 The Appellants made no more payments after curing the default in September 1998. 
Richard testified he has no recollection of making any payments after September 1998. 
The Bank left messages with Richard and the Breckenridges in November regarding the
October payment. On December 2, 1998, the Bank informed the Breckenridges that the
Haases had failed to return the Bank's calls, that the account would not be held any longer,
and that satisfactory arrangements must be made by the next day or the matter would be
referred out for repossession. On December 5, 1998, the Breckenridges reported to the
Bank that the Haases were not returning their calls, either. They told the Bank to proceed
with posting an eviction notice and picking up the mobile home. The Haases never
vacated the mobile home, and the Bank sued to recover the debt and for possession of the
mobile home.

 We first address the Appellants' second point of error, as it is dispositive of their first
point. In connection with their second point, the Appellants complain the trial court erred
in failing to file additional findings of fact and conclusions of law in response to their
properly and timely requested additional findings of facts and conclusions of law on the
elements of their affirmative defenses. We found that the Appellants were correct and
abated the case to the trial court to make the requested findings. (2) The trial court filed
these additional findings of facts and conclusions of law, and we requested supplemental
briefing from the parties as to these findings. 

 The Appellants contend the trial court erred in finding against them on their
affirmative defenses. They contend the evidence is legally and factually insufficient to
support the trial court's findings. The Appellants pled three affirmative defenses: 
(a) presentment and demand; (b) notice of default and opportunity to cure; and (c) waiver
of timely payment. The Appellants had the burden of proof on their affirmative defenses. 
The appropriate challenge to a fact-finder's finding concerning an issue on which the
complaining party had the burden of proof is either a matter of law point or a great weight
and preponderance point. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d
264, 275-76 (Tex. App.-Amarillo 1988, writ denied).

 In reviewing matter of law points, we must examine the record for evidence that
supports the finding, ignoring any evidence to the contrary; and, if there is no evidence to
support the finding, we must then examine the entire record to determine if a contrary
proposition is established as a matter of law. Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001). In reviewing great weight and preponderance points, we must examine
the entire record to determine if there is some evidence to support the finding, and then
determine whether, in light of the entire record, the finding is manifestly unjust. Traylor v.
Goulding, 497 S.W.2d 944, 945 (Tex. 1973); In re King's Estate, 150 Tex. 662, 244 S.W.2d
660, 661 (1951).

 The Appellants appeal the court's finding that the Breckenridges waived their
right to presentment and demand by signing the retail installment contract as
guarantors. John signed the contract as purchaser and guarantor, and Shirley signed as
joint purchaser and joint guarantor. The trial court found in its conclusions of law the
Breckenridges waived acceptance, presentment, demand, protest, notice of protest, notice
of dishonor, and any other conditions of their liability by executing the guaranty portion of
the contract. The guaranty provision of the contract includes the following language: "The
undersigned consent to and waive . . . presentment, demand, protest, notice of protest,
notice of dishonor and any other conditions to the liability of the undersigned under this
guaranty." 

 The Appellants contend this language in the guaranty section of the contract does
not mean the Breckenridges waived presentment and demand in their capacity as makers
of the contract, contending that, if the Breckenridges waived any right to presentment and
demand, it was as guarantors and not as makers. The Appellants contend a strict, narrow
reading of the guarantor provision is required under Texas law because, in the construction
of language in a contract, we ordinarily give the language its plain, grammatical meaning. 
Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987). Because the language
states: "The undersigned consent to and waive . . . presentment, demand, protest, notice
of protest, notice of dishonor and any other conditions to the liability of the undersigned
under this guaranty," the Appellants contend this limits the waiver of the Breckenridges to
their role as guarantors. There is no evidence the Breckenridges waived presentment and
demand in their capacity as makers of the contract.

 Nonetheless, the Bank sued the Breckenridges generally under the note, thereby
suing them in both capacities, as makers and guarantors. As guarantors, the
Breckenridges clearly waived their right to presentment and demand, as well as their other
affirmative defenses. The contract provides, "The undersigned agrees to pay all amounts
owing hereunder upon demand, without requiring any prior action or proceedings against
the Purchasers or the Collateral." Because the Bank sued the Breckenridges in their
capacity as guarantors, the trial court properly held the Breckenridges liable under the
contract. The Appellants' second point of error is overruled.

 Because the trial court properly found in favor of the Bank, and the judgment awards
the Bank the mobile home, there is no need to address the Appellants' first point of error
that the trial court wrongfully issued and should have dissolved the writ of sequestration.

 In their third point of error, the Appellants contend the trial court erred in finding the
Bank did not violate the Truth-in-Lending Act. The Appellants complained the trial court
failed to file additional findings of fact and conclusions of law in response to their properly
and timely requested additional findings of fact and conclusions of law on the elements of
the Truth-in-Lending Act. We found the trial court should have filed these additional
findings of fact and conclusions of law, and abated the case to the trial court to make the
requested findings. The trial court filed these additional findings of fact and conclusions
of law, and we requested supplemental briefing from the parties as to these findings. 

 The Appellants contend the trial court erred in finding the federal Truth-in-Lending
Act does not apply to this case as a matter of law. The trial court held the contract
evidences a transaction that is an "exempted transaction" as defined by Section 1603 of
the Truth-in-Lending Act. (3) The Truth-in-Lending Act does not apply to "[c]redit
transactions, other than those in which a security interest is or will be acquired in real
property, or in personal property used or expected to be used as the principal dwelling of
the consumer, in which the total amount financed exceeds $25,000." 15 U.S.C.A.
§ 1603(3) (West 1998). The Appellants contend the court need not reach the merits of this
affirmative defense because the Bank has waived this defense by failing to plead it before
trial.

 The Appellants contend the exemption to the statute is like an affirmative defense
that is waived if not affirmatively pled. However, the burden to show that the transaction
falls within the Truth-in-Lending Act is on the Appellants in this case. In order to establish
the creditor's liability under the Truth-in-Lending Act, the complaining party must show that
the disputed transaction is the type of transaction covered by the Act. Katz v. Carte
Blanche Corp., 496 F.2d 747, 751 (3d Cir. 1974). The Appellants point to United States
v. First City Nat'l Bank, 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967), and Fed.
Trade Comm'n v. Morton Salt Co., 334 U.S. 37, 44-45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948),
in support of their contention the Bank had the burden of proof to show this transaction was
exempt under the statute. These cases hold that the general rule is the party who claims
the benefits of an exception to the prohibition of a statute bears the burden of proof. First
City Nat'l Bank, 386 U.S. at 366; Morton Salt Co., 334 U.S. at 44-45. Both of these cases
dealt with situations where the actions of the defendants were generally prohibited by law. 
First City National Bank involved the merger of two banks and whether they were exempt
from prohibitions of merging under antitrust laws via an exemption. This is not a case in
the Truth-in-Lending Act. As the more recent decision from the Third Circuit holds, the
burden is on the plaintiff alleging violation of the Truth-in-Lending Act to show that the
transaction is the type covered by the Act. Katz, 496 F.2d at 751. The court found the
amount financed exceeds $25,000.00; the contract relates to personal property, not real
property; and the Breckenridges affirmatively represented that the mobile home acquired
was not to be their principal dwelling. The evidence proves the transaction qualifies as an
exempt transaction under Section 1603(3).

 We find the Bank did not have to plead the transaction's exemption as an affirmative
defense and affirm the trial court's finding regarding the Truth-in-Lending Act. Because the
Appellants did not attack the merits of the trial court's findings, we need not address
whether the trial court's findings regarding the transaction were correct.

 We affirm the judgment. 



 Donald R. Ross

 Justice


Date Submitted: February 28, 2002

Date Decided: March 19, 2002


Publish

 
1. See 15 U.S.C.A. § 1601, et seq. (West 1998 & Supp. 2001); Tex. Bus. & Com.
Code Ann. § 17.01, et seq. (Vernon 1987 & Supp. 2002).
2. See Buzbee v. Buzbee, 870 S.W.2d 335, 336 (Tex. App.-Waco 1994, no writ),
where the same procedure was followed.
3. The following exemptions are provided in the Act: 


 (1) Credit transactions involving extensions of credit primarily for
business, commercial, or agricultural purposes, or to government or
governmental agencies or instrumentalities, or to organizations. 


 (2) Transactions in securities or commodities accounts by a
broker-dealer registered with the Securities and Exchange Commission. 


 (3) Credit transactions, other than those in which a security interest
is or will be acquired in real property, or in personal property used or
expected to be used as the principal dwelling of the consumer, in which the
total amount financed exceeds $25,000. 


 (4) Transactions under public utility tariffs, if the Board determines
that a State regulatory body regulates the charges for the public utility
services involved, the charges for delayed payment, and any discount
allowed for early payment. 


 (5) Transactions for which the Board, by rule, determines that
coverage under this subchapter [15 U.S.C.A. § 1601, et seq.] is not
necessary to carry out the purposes of this subchapter. 


 . . . .


 (7) Loans made, insured, or guaranteed pursuant to a program
authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070
et seq.).


15 U.S.C.A. § 1603 (West 1998).